# CHARLESTON.

## TURNER *v.* McCORMICK.

Submitted June 6, 1904.    Decided November 1. 1904.

1. OPTIONAL SALE—*Executory Contract.*
    An acceptance in writing of a formal and carefully prepared option of sale of land, within the time allowed by it for acceptance, using the formal words, "according to terms of the option given me," to which there is added, by the conjunction "and," a request for a departure from its terms as to the time and place of performance, is unconditional and converts the option into an executory contract of sale. (p. 165, 173).

2. EXECUTORY CONTRACT—*Rescission.*
    A mere request, by one of the parties thereto, for an alteration or modification of a fully accepted proposed contract which by acceptance has been wrought into a binding contract, is not a breach thereof, giving right of rescission thereof or action thereon. Neither does it effect such alteration, unless assented to by the other party. (pp. 165, 171, 173).

3. EXECUTORY CONTRACT—*Acceptance.*
    Such request relates to performance of the contract, and is not an element in the making thereof, although written, and connected, as aforesaid, with the acceptance, on a single sheet of paper, so as to make of the acceptance and request a compound sentence. (pp. 171, 173).

Appeal from Circuit Court, Monongalia County.

Bill by Edgar D. Turner against William McCormick. Decree for defendant, and plaintiff appeals.

*Reversed.*

MORELAND & GLASSCOCK and H. L. ROBINSON, for appellant.

H. M. RUSSELL and W. S. MEREDITH, for appellee.

POFFENBARGER, PRESIDENT:

In this case, the circuit court sustained a demurrer to a bill, praying the specific performance of two alleged contracts for the sale of the Pittsburg vein of coal underlying two separate tracts of land in Monongalia county. The owner of the land executed two options of sale to the plaintiff, each of which provided that it should be accepted within a certain time, and, if not so accepted, it should be void. The demurrer was sustained upon the theory that what is relied upon in the bill as constituting acceptance is insufficient, because it sought to introduce a new element into the proposed contract, and make not the contract originally proposed, but a new and different contract.

The first option bears date December 31, 1901, was executed by William McCormick, as party of the first part, and E. D. Turner, as party of the second part, covers the coal in a tract of about 150 acres at the price of fifty dollars per acre, one-third to be paid in cash on delivery of deed and the balance in two equal annual payments, and provides, as to acceptance, that, "The party of the first part agrees that the party of the second part shall have until the first day of March, 1902, to accept the coal herein described as the same may be determined by the county surveyor. * * * And if the party of the second part does not give notice of such acceptance by said date, this contract shall be void, and of no further effect."

The other option, executed by the same parties, is dated February 8, 1902, covers the Pittsburg vein of coal in and underlying a tract containing about one hundred and four acres, at the price of $41.00 per acre, one-third to be paid in cash on delivery of deed and the balance in two equal annual payments, and provides as to acceptance, that, "If the second party, heirs or assigns, fails to notify said first party in writing, on or before the first day of March, 1902, that he or they elect to purchase said coal, then this agreement is to be considered as rescinded, null and void and neither party to be bound thereby or liable in any way." As to performance and the consummation of the proposed sale, the written option provided as follows: "The first party shall and will, within ninety days, after the notice in writing that the said second party, his heirs or assigns, elect to purchase said coal at his own proper cost and charge, make, execute and deliver to the said second party, his heirs or assigns a good and

sufficient deed, or deeds for said coal and mining rights, in fee simple, clear of all incumbrances, with clause of general warranty," etc.

The first option does not require acceptance in writing nor performance within niety days after notice of acceptance. The second does impose these conditions. Besides alleging a verbal acceptance of both of these options on the 21st day of February, 1902, the bill avers an acceptance and notice thereof in writing, and sets out a copy of the notice of acceptance which reads as follows:

"Morgantown, W. Va., Feb. 21, 1902. Mr. William McCormick: I hereby notify you that your coal will be accepted according to terms of the option given to me on same and respectfully request you to make delivery of deed, with abstract of title, to me, in Morgantown, W. Va., on Saturday, June 28th, 1902, hour and place to be decided later. Yours truly, E. D. Turner."

Two objections to the written acceptance are urged. One of these relates to the first clause, and is that its language relates to the future and imports a promise to accept and not to notice of a completed acceptance. The other objection is that the request that the deed be made on June 28, 1902, in Morgantown at an hour and place thereafter to be decided, superadded to the alleged notice of acceptance, made it conditional and not absolute, by attempting to introduce new terms into the proposed contract. Acceptance of the first option gave the right to have immediate performance and allowed no time to the vendor in which to perform thereafter. Absolute acceptance of the second option would have included as one of the terms thereof an agreement that the vendor should have ninety days within which to tender the deed. As it required acceptance on or before the first day of March, 1902, and performance within ninety days thereafter, the request or condition in the notice that the deed be delivered on the 28th day of June, 1902, named a date more than ninety days after the first day of March, the limit for acceptance, and one more than ninety days after the notice of acceptance.

The first objection overlooks the substantial and legal meaning of the terms, and amounts to a mere criticism of the phraseology. By turning this weapon upon the appellees themselves their contention is completely overthrown. The language is not that the option will be accepted, but that the coal will be accepted

in the future and the contract itself contemplates performance in future and after acceptance of the option. It is in the very nature of a contract that it shall be first made and then performed. Moreover, the language of the acceptance, in strictness, more nearly conforms to the language of the contract than that which it is said should have been used. The provision of the option as to notice of acceptance uses this language: "That he or they elect to purchase said coal." It requires notice of intention and election to do a thing in the future. Hence, it may be said, without doing any violence to the language of the option, that notice of an election to purchase according to the terms of the option should be understood and deemed to carry with it by necessary implication prior or contemporaneous acceptance of the terms of the option. Acceptance of the coal according to the terms of the option could not take place without a full accession to all the terms of the option. To this it may be added that it is not usual to refer to the instrument by its date or otherwise and merely say it is accepted or its terms agreed to. Thus, in *Watson* v. *Coast*, 35 W. Va. 463, the vendee had telegraphed as follows: "Will take the property. Meet me at Toronto, first train. Answer." Another telegram responding to another proposal was, "Will accept your proposal." No substantial distinction between these forms of acceptance was discovered. In both instances, the future tense was used. In *Barrett* v. *McCallister*, 33 W. Va. 738, there was a verbal notice in which the plaintiff told the defendant, after looking over the land, he was satisfied with it and was ready to pay the money when the deed should be made. Then a day or two afterwards, he wrote a letter in which he said, "I am here at your place of business ready to take the land and pay the money whenever the deed is made." In these instances, the language, with one exception, related to performance and it never occurred to anybody to question its sufficiency on that ground. In the same case, at page 745, Judge Brannon took this view. He said: "Why talk about the execution of a deed if the land was not satisfactory? Why talk about a deed, if Barrett had not accepted the option? The fact that they so talked about a deed proves that Barrett had accepted the option and informed McCallister of it; indeed, this conversation about a deed is of itself acceptance."

But it is further urged that the reference to the future in the·

first clause, coupled with the request in the second clause bears out the theory of a promise to accept in the future and precludes the view that the writing conveys notice of a prior or contemporaneous acceptance. It has already been pointed out that the declaration of intent to take the coal in accordance with the terms of the option, presupposes and necessarily implies present or past acceptance of the terms. The notice does not say I will take the coal according to the terms of the option on the 28th day of June, or if you will deliver the deed on the 28th day of June. Its terms are positive. The notice is that the coal will be accepted according to the terms of the option given. This is followed by a request, not a condition, that the deed be delivered on the 28th day of June, instead of at an earlier date. To couple the two clauses in the manner suggested would be to depart from the plain common sense meaning of the notice. It would do violence also to the grammatical construction of the notice. No reason is given why the latter clause limits and qualifies the former. It is not pointed out nor even suggested that the rules of grammatical construction require it, nor that the two clauses have such logical connection. The copulative conjunction used simply makes grammatical connection of the two clauses. It does not make them mutually dependent, nor the former conditional.

Yielding the first contention for the purpose of argument, counsel for appellee say that if the first clause standing alone would amount to unconditional acceptance, converting the option into a contract, binding upon both parties, the addition of the request that delivery of the deed be made on the 28th day of June, a date more than ninety days after acceptance and after the time in which acceptance could be made, renders the notice insufficient. They say this request does not relate to performance of the contract after the making thereof as proposed, and that the insertion thereof in the written notice was an attempt to engraft upon the contract proposed conditions or terms not embodied in the original proposition; and, as the bill does not show any acceptance in writing of this new condition, the effort to change the original proposition has failed and no contract has been made. If this last clause of the deed thus qualified the first, it would work a change as to the time of payment of

the purchase money and delivery of the deed. It would also designate a place of payment as to which the options are silent.

The bill avers, as the reason for requesting delivery on the 28th day of June, that the plaintiff had similar options upon the coal underlying several other tracts of land in the neighborhood of those owned by the defendant, and desired to close them all on the same day, it being his purpose to obtain an aggregate of 1,000 or 1,200 acres of coal in a body. While this averment is not important, it well illustrates the fact that such a request may be added to an acceptance for a good purpose, and it does not necessarily indicate an intention to change the terms of the proposed contract. The plaintiff desired the land and was willing to take it and pay for it. He preferred to close all the options on the same day, and therefore, added this request. Suppose he had on one day put the first part of the notice in writing and sent it to the defendant. That would have closed the contract undoubtedly. Then suppose on the next day he had written a request that the performance be delayed until the 28th of June. That would not have been a repudiation of the contract. It would have been a mere request for an extension of time. The defendant could not have treated the contract as broken for that reason. He could have enforced it notwithstanding this request. The mere fact that the acceptance and the request are in juxtaposition, standing in the same sentence, united by a conjunction, does not change their character or legal sense.

The contention of counsel for appellee is unsupported by authority. "If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer because of inquiries whether the offerer will change his terms, or as to future acts, or the expression of a hope, or suggestions, etc." 9 Cyc. 269. "Plaintiff answered a proposition to lease 'I will accept your offer to lease to you at $200 per year for three or five years as you choose.' Defendant answered, 'Make out lease for place for five years at $200 per year.' He also said in this letter that he would like to build on a cookroom, with privilege to remove it. Plaintiff recognized that a lease for five years existed. *Held,* these letters made a lease, and the request as to the cookroom did not attach a condition to defendant's acceptance." *Culton* v. *Gilchrist,* 92 Ia. 718. In *Phillips* v. *Moor,* 71 Me. 78, the court held that an acceptance coupled with a request for a modification, is

an absolute and unconditional acceptance and closes the contract. In that case, the subject of the contract was a lot of hay. The defendant offered $9.50 per ton for part of it and $5.00 for the balance. The plaintiff sent him a postal card in reply saying he had hoped the defendant would pay him $10.00 for his hay of the best quality and closed by saying, "but you can take the hay at your price, and when you get it hauled in, if you can pay the $10.00 dollars, I would like to have you do it, if the hay proves good enough for the price." The defendant, having received this card on Friday morning, made no reply, and Sunday morning the hay was burned in the barn. The court held that there was a contract and that, under the peculiar circumstances dispensing with actual delivery which ordinarily is necessary to the passing of title, the defendant was liable for the price of the hay. In *Stephenson* v. *McClain,* 5 Q. B. D. 346, the principle is well illustrated. The defendant had certain warrants for iron. He wrote to plaintiffs, asking whether they could get him an offer for them. After some correspondence, the defendant fixed a net cash price of forty shillings per ton, the offer to hold good until the following Monday. On the morning of that day at 9:42 defendant telegraphed this request: "Please wire whether you would accept forty for delivery over two months, or if not, longest limit you could give." No answer having been received, the defendant, after receipt of this telegram and without having replied to it, sold the warrants, and at 1:25 P. M. telegraphed to the plaintiffs that he had done so. Before the sending of this telegram, the plaintiffs found a purchaser for the iron, and at 1:34 P. M., telegraphed the defendant stating that they had secured his price. The defendant refused to deliver the iron, and thereupon the plaintsiffs brought an action against him for nondelivery and recovered. The court held that the inquiry as to whether the plaintiff would modify the terms of their offer was not a rejection of the offer, and he not having withdrawn the offer before the sale was effected, a binding contract was effected by the acceptance of the plaintiffs upon finding the purchaser at 1:00 P. M., 25 minutes prior to the sending of defendant's telegram. The ruling in that case is a very strong adjudication against the contention of the appellee here. The request or suggestion for modification of the offer made before its acceptance, might well have been regarded as an indication of a purpose

not to accept. Here, the acceptance precedes the request for a modification.

Among the cases relied upon as authority, sustaining the action of the court in dismissing the bill, is that of *Potts* v. *Whitehead,* 23 N. J. Eq. 512. The report of the case in that volume does not set out the facts fully. They are given at length in 20 N. J. Eq. (5 C. E. Green) at page 55. There it is shown that the offer was such that an unqualified acceptance of it would not have constituted a contract, for the offer and acceptance would have left open to further negotiation important elements of the contract. In that case the defendant signed a paper embodying an offer to sell certain land in consideration of $20.00 per acre, $500.00 of the price to be paid on the execution of a deed, and the balance to be secured by a mortgage on the land with interest at six per cent. When the deferred payments of the purchase money should become due was not stated, and this paper and the alleged acceptance did not fix any time. If the latter had, it would not have been binding unless assented to by the defendant. This was one ground of the decision of the chancellor, holding that there was no contract. The alleged acceptance said, "Have twice attempted the tender of the first payment of $500.00 upon the agreement made between us on the 7th of December last. I will meet you, etc. * * * when I shall be ready to make tender of the money and execute the proper agreements thereupon." This acceptance did not say, as does the one under consideration here, that the plaintiff would take the property in accordance with the terms of the agreement. He said he would pay $500.00 upon the agreement and execute the proper agreement thereupon. There is scarcely a resemblance between the two papers. What was meant by proper agreement, the court had no means of knowing. He might have meant such agreements as were just and fair or such as the offer indicated. The paper was indefinite and ambiguous. Respecting it, the chancellor said: "It doubtless might fairly be inferred from this letter, that the complainant intended to accept the offer in some way, and expected to enter into an agreement for the purchase of this property, at the price fixed; but he did not bind himself so to do."

Another case relied upon is *Sawyer* v. *Brossart,* 67 Ia. 678. In that case, the defendant, a resident of Los Angeles, California,

offered for sale, by letter, two business rooms in Iowa City, say-
ing to the plaintiff: "You can have that building for thirty-five
hundred dollars, or the two for $5,000. Let me hear from you
at once." The alleged acceptance was by telegram from Iowa
City, saying: "Accept your offer for two buildings at five thou-
sand dollars. Money at your order at first National Bank here."
The court held that the defendant "was entitled under his offer
to have the money paid to him at his place of residence and to
deliver the deed there, and that, as the acceptance of plaintiff
was not an acceptance of the offer as made, it did not bind B.,"
the plaintiff. It is to be noted here that the plaintiff did not re-
quest permission to pay the money into the bank to the defend-
ant's credit at Iowa City, but said, in effect, that the money had
been paid there to his credit. Therefore, the payment into the
bank at Iowa City was made a part of the acceptance. By such
payment and notice plaintiiff attempted to add a new condition
to the contract proposed, which was silent as to the place of pay-
ment and, therefore, in law, contemplated payment at Los
Angeles. It was not an unqualified acceptance coupled with a
request for permission to pay at Iowa City. *Corcoran* v. *White,*
117, Ill. 118, does not support the postion taken by the appellee.
The letter purporting to be an acceptance said the party would
accept the offer provided the title was perfect. It further said:
"I will call at your office Monday at 10 o'clock, at which time I
can get the abstract and have it examined." The common sense
of this letter was that the writer had not accepted and would not
accept, if he did not find the title perfect. In *Coffin* v. *Port-
land,* 43 Fed. Rep. 411, relating to an attempted sale of bonds,
the letter said: "We will take your  *  *  *  bonds  *  *  .*
at par, you to furnish us written opinion of your city attorney as
to legality of bonds, certified copy of council proceedings and
ordinance, certified statement of your city debts, assessed value
of your taxables, probable real value, the amount of your debt,
and your present approximate population." After putting upon
its minutes an acceptance of this proposition to purchase, the
council passed a resolution rescinding what the resolution called
a contract, and accepted the proposition of another person for
the same bonds. The court says, in its opinion: "It is more rea-
sonable to regard the proposition of the plaintiffs in this respect
as being conditional, and the acceptance of it as being upon the

same condition. This being so, the plaintiffs of course have no⋅ right of action." What is meant by this is, that there had not been in fact any proposition to buy or acceptance of such proposition. The plaintiffs were simply considering the advisability of purchasing and, in the exercise of prudence, desired to examine⋅ all the proceedings relating to the issue before making an unqualified proposition to buy. There is nothing in that case that seems to have any bearing upon the question under consideration. here.

Three cases, referred to in one of the briefs for appellee, are,. in all material respects, alike. They are *Robinson* v. *Weller,* 8⋅ S. E. 449; *Northwestern Iron Co.* v. *Meade,* 94 Am. Dec. 557; and *Egger* v. *Nesbitt,* 43 Am. St. 596. They enunciate the proposition that an acceptance of an offer to sell land, but fixing a different place for the delivery of the deed and payment of the⋅ money than the residence of the offerer, or the place named in the offer, is not an unconditional acceptance so as to bind the⋅ seller. This is asserted by several cases. *Bilbert* v. *Baxter,* 71 Ia. 327; *Langellier* v. *Schaefer,* 36 Minn. 361. But they are all cases arising upon loose, informal correspondence, making it necessary to look to the whole of each paper to ascertain the true⋅ meaning and intent of the parties. None of the letters relied upon as acceptances said an offer was accepted in accordance with its terms, or that the property would be taken according to⋅ the terms of the letter of proposal. In none of them was the⋅ word "request" used, after language of unequivocal and definite⋅ acceptance as in this case. In *Robinson* v. *Weller,* the reply⁻ said: "Offer accepted; money ready; send deeds at once." In *N. W. Iron Co.* v. *Meade,* the letter said: "If this is the very⋅ best offer you can make, you may properly execute the within deed," etc. In *Egger* v. *Nesbitt,* the reply said: "I will accept⋅ your proposition, with the understanding that you will deliver to⋅ me all papers," etc. Owing to the distinctions pointed out,. these precedents are not regarded as applicable or controlling in⋅ the present case.

Moreover, the reasoning in some of these cases is not entirely⋅ satisfactory. Nor does it seem to accord with principles an--nounced in *Watson* v. *Coast,* 35 W. Va. 463. If a man says "I accept your offer," that makes a contract. It assents to all the⋅ terms of the offer. What more is necessary? There is a com--

plete *"aggregatio mentium."* The acceptance conforms to the offer in every particular. How can a mere request relating, not to the making of the contract, but to its performance, be deemed to change it? Would the acceptor be permitted to excuse himself from performance on the ground of such request? No precedent. of that kind has been found. They are all cases in which the proposer, desiring to escape from the consequences of his offer, because somebody else has proposed a higher price than the first asked, seeks to repudiate the transaction and sell to the other party. Property rights are sacred and should be well guarded. by the law, but when a man has deliberately made a fair contract of sale, he ought not to be permitted to avoid it on some flimsy pretext, in order to avail himself of a better bargain. Time and place of payment, when not mentioned in an accepted. offer, are fixed by law, and are matters of performance, carrying out the contract, a thing wholly distinct and separate from the making of the agreement. If, contemporaneously with, or subsequent to the making of the contract, either party suggest, request or propose a time, place or mode of performance, different from that agreed upon that does not of itself effect such change nor does it cause a breach, giving right of action or rescission to the other party. *Swiger* v. *Hayman et als,* decided at this term. Either can compel the other to perform the contract as made. He may ignore the suggested, requested or proposed alteration of, or deviation from, the contract, as to the performance thereof. *Watson* v. *Coast,* 35 W. Va. 463. But, if the suggested departure in performance is not accompanied by a declaration of unqualified and unconditional acceptance of the offer, it would be otherwise of course. Some of the cases here referred to disclosed such acceptance and others did not. The former do not harmonize with the principles enunciated by this Court, and the latter do.

As much weight is accorded to the use of the word "request" here, and some of the books say that, if a request for a modification be made, it is deemed a rejection of the proposal, a case illustrating this rule will be noticed. It is *Burmester & Co.* v. *Phillips Co.,* 25 Fed. Rep. 805. Burmester & Co. of Charleston,. South Carolina, on the 14th day of March, 1885, wrote Phillips & Co., of Fredericksburg, Virginia, as follows: "On receipt of letter (you) can ship us a cargo of 10 or 15,000 bushels choice

.dry Rappahannock white corn, at 51 cents, free on board, freight 7 cents a bushel." Phillips & Co. did not have the corn, but, on the 16th of the same month, they replied that they were endeavoring to get it. On the 20th they wrote that they could get it at the price and were then endeavoring to secure a vessel to carry it at seven cents. On March 23rd, Burmester & Co., wrote that they hoped Phillips & Co., would succeed in getting a vessel promptly and gave some directions about ship's papers. On the 30th, Phillips & Co. wrote that they hoped to succeed in getting a vessel and, if so, would observe the direction about ship's papers. On April 4, Phillips & Co. notified Burmester & Co. by wire that they had succeeded in getting a vessel and that, as soon as she arrived at the landing, they would advise, and that they would send a letter giving particulars. To this, Burmester & Co. replied by letter of April 4th, that they were awaiting letter's arrival as to particulars. On April 9th, Phillips & Co. reported that the vessel had arrived, and would be ready to receive the cargo on the following Saturday and that they would draw for the cargo at sight without grace, etc. To this Burmester & Co. made no reply. On April 11, Phillips & Co. telegraphed as follows: "Not hearing from you, we have resold the cargo of corn." Burmester & Co. telegraphed back that they had not cancelled the order and would expect cargo as ordered. Burmester & Co. afterwards sued and the court held as follows: "The letter and telegram of the 4th of April were a *new proposal,* and that the failure of the Charleston house to answer before the 11th, prevented the meeting of minds necessary to a contract; so that there was no contract, and defendants were at liberty to resell." In the opinion the court applied general principles, expressed as follows: "If a condition be affixed by the party to whom the offer is made, or any modification or change in the offer be requested, this constitutes in law a rejection of the offer, and a new proposal, equally ineffectual to complete the contract until assented to by the first proposer." In the light of the facts in that case as above stated, the proposition is sound and applicable. Instead of accepting Burmester & Company's proposition for an immediate shipment, Phillips & Co. announced their inability to do so and made a counter proposition to obtain and ship the corn later. This was a request for a new contract, different from the one first proposed. The court held that to be a re-

jection of the first proposition. It being a new proposal on the part of Phillips & Co., not accepted by Burmester & Co., but treated with silence, there was no contract between the parties. There was no pretense of an acceptance of the original proposal of purchase.

This somewhat lengthy review of the authorities bearing upon the question seems to establish the following propositions: First—A request for a change or modification of a proposed contract, made before an acceptance thereof, amounts to a rejection of it. Second—A mere inquiry as to whether the proposer will alter or modify its terms, made before acceptance or rejection, does not amount to a rejection, and if the offer be not withdrawn before aceptance made within a reasonable time, the offer becomes a binding contract. Third—A request, suggestion or proposal of alteration or modification, made after unconditional acceptance, and not assented to by the opposite party, does not affect the contract put in force and effect by the acceptance, nor amount to a breach thereof, giving right of rescission. Fourth—Acceptance of a formal and carefully prepared option of sale of land, within the time by it allowed, and according to its terms, although accompanied by a request for a departure from its terms as to the time and place of performance, is an unconditional acceptance and converts the option into an executory contract of sale, provided the request be not so worded as to limit or qualify the acceptance.

The bill alleges a verbal acceptance of both options at the time of delivery of the acceptance in writing, and a verbal agreement extending the time of performance until June 28th. These allegations have provoked a good deal of argument on the subject of an extension of time of performance and alterations of written contracts by parol agreement. The conclusion above indicated renders it unnecessary to go into these questions or to examine the authorities cited as bearing upon them.

Our conclusion is that the acceptance in writing of the second proposal is unconditional and converts the proposal into a binding contract. The other option does not require the acceptance to be in writing. It was verbally accepted, and that is sufficient when the option does not require a written acceptance. *Weaver* v. *Burr,* 31 W. Va. 776; *Watson* v. *Coast,* 35 W. Va. 463; *Barrett*

-v. *McCallister,* 33 W. Va. 745; *Creigh* v. *Boggs,* 19 W. Va. 240; *Capehart* v. *Hale,* 6 W. Va. 547.

For the foregoing reasons, the decree complained of is re-versed, the demurrer overruled and the cause is remanded for further proceedings.

*Reversed.*