ROBERT M. KNOX, Appellee, v. H. L. McMURRAY and wife, Appellants.

**Specific performance:** OFFER OF SALE: ACCEPTANCE: EVIDENCE. In 1 this action for specific performance of an alleged contract of sale, embodied in the correspondence of the parties, the evidence is

reviewed and it is *held*, that the acceptance of the proposition to sell was not unqualified, in that it fixed a specified time for payment of a cash installment, while the offer contemplated simply a reasonable time in which to make the payment, and the acceptance in this respect was a change from the vendors offer.

**Same:** ABSTRACT OF TITLE: PLACE OF PAYMENT: NEW CONDITIONS. The naked offer to sell real property at a stated price imposes no duty on the seller to furnish an abstract of title; and where no place of payment was stated in the offer the seller is under no obligation to accept payment or furnish a deed at any place other that his residence; and when such requirements are added to a simple offer to sell they amount to new conditions which, unless mere requests a compliance with which is not insisted upon, must be assented to before the contract is complete.

**Same.** Where the purchaser, in addition to his acceptance of a simple offer of sale at a stated price, said that ''we would like to have you send on the deed and abstract, and when they are found correct your money will be turned over to you;'' he thus qualified his acceptance by indicating his intent to make the promise of payment contingent upon the production of deed and abstract at his place of residence which should upon inspection be found satisfactory.

**Same:** FINDINGS OF TRIAL COURT: CONCLUSIVENESS. The rule that the appellate court will defer to the findings of the trial court on disputed matters of fact does not apply where the entire controversy is based upon the interpretation of writings, the contents of which is in no manner disputed.

**Same:** ACCEPTANCE: WAIVER OF CONDITIONS. Failure of the vendor to reply or object to an acceptance of his offer, which for the first time suggests a day certain for performance, will amount to a waiver of objection to the time fixed; but where he treats it as a mere proposal and replies demanding an additional price, it does not amount to a waiver.

*Appeal from Blackhawk District Court.*—HON. F. C. PLATT, Judge.

MONDAY, MARCH 17, 1913.

ACTION in equity to enforce an alleged contract to sell real estate. Decree as prayed, and defendants appeal.— *Reversed.*

*Mullan & Pickett* and *W. B. McMurray,* for appellants.

*John E. Williams* and *Edwards & Longley,* for appellee.

WEAVER, C. J.—The defendant, a resident of Ligonier,
Pa., was the owner of certain real estate in the city of Water-
loo, Iowa. Prior to December 30, 1908, the
plaintiff, a resident of Waterloo, wrote the
defendant, offering to purchase the property
at a valuation of $11,250. The negotiation
thus begun was continued in a series of five letters transmitted
by mail.

*Margin note:* 1. SPECIFIC PERFORMANCE: offer of sale: acceptance: evidence.

We here quote the letters in full:

Ligonier, Pa., Dec. 30, 1908.

My Dear Mr. Knox: I received in yesterday's mail your
offer $11,250.00 for my business block in Waterloo, Iowa.
This offer came through Mr. Bateman, who has been acting
as my agent for the past five or six months. I wish you had
made your best offer direct to me. I'll tell you why. With
all due respect to Mr. Bateman, I think I need the commis-
sion which you of necessity must pay him. You may know
that I am a clergyman, and have been serving a congregation
at a small salary, and all my little savings of thirty years
have gone into that property. It is my little all. About
one year ago, on account of a nervous breakdown, I was
obliged to give up my work. One reason why I have refused to
sell this property was this: On account of my calling, I
am not versed in business of any kind, and I was afraid that
if I should sell I might somehow lose what little money I had
saved. For this reason I have always refused to put a price
on this property. And then it has brought me a fairly good
percentage for the money invested. I bought it about twenty
or twenty-five years ago, and it has cost me I know over nine
thousand dollars. So you see, while you may think your offer
is a liberal one, I would be making very little money in the
property. After my health was broken, my doctors advised
me to spend the winter in California. On my way home,
wife and I stopped off at Waterloo. In talking with the wife
of the proprietor of the hotel where we stopped, we said that
we wanted to look over a little property that we owned in
Waterloo. She asked where it was located. We pointed it

out. She remarked that the property was as 'good as gold' and gave many reasons why—which I shall not repeat. Her husband was also in the real estate business, and her opinion was worth something. Afterward we employed his partner, Mr. L. E. Baker, as our agent. My property done better than ever before. We were exceedingly sorry when death removed him. Now, Mr. Knox, I believe that this property is a good investment at twelve thousand dollars, and I am willing that you should have it at that price. I would be willing that you should pay me $2,000.00 in cash and the balance to suit your own convenience. I have not the remotest idea as to what I will do with the money, as I have no place at present where I can invest it, and I would like to have as much of the money remain in the property as possible with interest at six per cent. You have made some improvements in this property and I would like to sell it to you rather than to some one else. I am positive that if you hold it for twenty-five years, as I have done, you will make a good deal more money out of it than I have ever made. But I think I am entitled to every dollar that is in it. An agent for selling that property would want at least 2 per cent for making the sale. Now, I am sure that I need that money worse than any agent you have in Waterloo, so I would like to deal direct with you and let me have the commission that you would be obliged to pay a real estate agent. I think we may be able to get together, but, Mr. Knox, I don't think you ought to ask me to sell this property for less than twelve thousand dollars. I have always said that when it reached that price I would let it go. I have during the last few months received several letters of inquiry concerning this property, and have been asked several times to put a price on it, but this I have always refused to do. Hoping to hear from you at an early date, I am, yours, H. L. McMurray, Ligonier, Pa.

P. S. I expect in a week or ten days to take trip South to escape the long, cold, and disagreeable winters. I may be absent for six weeks or two months. I can't stand the cold weather.

Waterloo, Iowa, Dec. 31, 1908.

Mr. H. L. McMurray, Ligonier, Pa.—My Dear Mr. Mc-Murray: We have your favor of the 30th inst., and note you have decided to sell us your property here for $12,000.00 payable $2,000.00 in cash, you to carry the balance of $10,-

000.00 on mortgage at 6 per cent interest. We have decided to accept your proposition and are enclosing you herewith a check for $100.00 to bind the bargain. The balance of purchase price to be paid February 1, 1909, and give you a mortgage back for the difference at 6 per cent interest payable on or before five years. We think we are paying you more than the above property is worth, but we realize if we want to stay here and do business, that a number of improvements will have to be made and we do not feel like going to any extra expense until we own the property. We are glad to note we can deal with you direct instead of through a real estate man, for we would rather have the commission. I beg to remain, very truly yours, R. M. Knox.

Latrobe, Pa., January 7, 1909.

Mr. R. M. Knox—My Dear Mr. Knox: Your letter was received in yesterday's mail. Would say that the day before I received your letter, I received a telegram with an offer of $12,000.00 for my Waterloo property. This party is very anxious to buy and I think would pay me even more than his first offer of $12,000.00, but I am free to confess that I think you ought to have this property, and what is more, I want you to have it, but naturally, if you put yourself in my place, you would want to get out of it all you possibly could. I have had enough worry over it for twenty years and I ought to have a little something now in return. Now, I thought like this: Since I have an offer of $12,000 from two parties, I thought that you ought in addition pay me for the repairs made on roof. Some of these bills are not in yet, and I hardly know how much they will amount to. Mr. Bateman could tell you. I am sure I could get several hundred more out of the other party, but I don't want to resort to any underhand business, and yet, at the same time, I want every dollar that I can possibly get for this property. It is the savings of thirty years' hard work. Let me hear from you, and in the meantime I may have a letter from my nephew which will help me decide. I don't want you to give me any more than any one else, but I do think you ought to give me as much. Yours, H. L. McMurray, Ligonier, Pa.

Waterloo, Iowa, Jan. 8, 1909.

Mr. H. L. McMurray, Ligonier, Pa.—Dear Sir: We have your letter of the 7th inst. and note contents very carefully.

We note that you say after you had made us the proposition to sell your property to us for $12,000 you had another offer, which you must bear in mind would not affect our deal in any way, as we accepted your proposition in good faith and we of course expect to carry out the sale of the property to me. Now in regard to the repairs you say that have been made on the roof and skylight, we would be willing to assume this obligation, which we think is more than fair on our part. We have accepted your offer in good faith and we will of course look to you to carry out same as per your offer we received in your letter under date of December 30, 1908. We do not blame you in wanting to get all you can for the property, but the price we are giving you is a very liberal one, but we realize, if we want to continue doing business here, we will have to make a good many improvements, and we do not feel justified in making them unless we own the property, and we are making a concession to you in agreeing to pay the repair bills as above stated in order that we can get this matter closed up without delay. We would like to have you send on the deed and abstract to the Iowa State Bank of Waterloo, Iowa, and when they are examined and found to be correct, your money will be turned over to you as per our letter accepting your proposition. Trusting you will give this matter your prompt attention, I beg to remain, yours truly, R. M. Knox.

Latrobe, Pa., January 7, 1909.

Mr. R. M. Knox: I wrote you this morning but in consulting with some of my friends, I have decided to call off the sale of my property and come back to my old plans of not selling until after the expiration of your lease. . I think this would be better for all parties concerned. I had another offer since writing you and so I have finally concluded that I will not sell until your lease expires. Thanking you for your kind offer, I am, yours, H. L. McMurray, Ligonier, Pa.

It is stipulated of record that the several letters were written on the dates named: that of the two letters written by the defendant under date of January 7, 1909, the one designated as No. 3 was written first, and that they were received by plaintiff in the same order—No. 3 on January 8, 1909,

and No. 5 on January 9, 1909. Relying upon the foregoing correspondence as constituting a complete written contract for the sale of the property, plaintiff brings this action to enforce its specific performance. The defendant admits the correspondence as above stated, but denies that his offer to sell the property was ever accepted by the plaintiff, or that the negotiations carried on by means of said letters ever resulted in a complete contract, and avers that while said negotiations were still incomplete he withdrew his offer, and refused to proceed any further therein. He further pleads that, although said negotiations were terminated on January 7, 1909, plaintiff did not proceed with reasonable promptness to insist upon or enforce his claim of right, but waited until a year or more had passed, and the property had increased very materially in value, before instituting this action, and is thus chargeable with laches, which deprives him of any right to relief in a court of equity.

As will be at once apparent from the foregoing statement, the first and most vital question presented by this record is whether the correspondence above quoted contains such an offer of sale or purchase by one party and such an acceptance by the other as is necessary to constitute a contract specifically enforceable in equity. It is the proposition of the appellant that, to constitute such a contract, the acceptance must be as broad as the offer, or, in other words, that to be sufficient for such purpose the acceptance must not be in the nature of a counter proposition, and must not be qualified by the addition of any condition or stipulation not expressed or implied in the offer of which the acceptor wishes to take advantage. The soundness of this legal proposition is not denied by counsel for appellee, but they contend that the acceptance made or attempted by him in the quoted correspondence satisfies all the requirements of the rule just stated. To that inquiry then we turn our attention. Restated in briefer form, the essential facts of the negotiations are as follows: They seem to have been opened by the appellee in a letter written prior to De-

cember 30, 1908, but for some reason not found in the record. It is manifest, however, that appellee then sought to buy the property for $11,250. Appellant's letter (Exhibit No. 1), when divested of its immaterial verbiage, is a rejection of that offer, and an expression of willingness to sell for $12,000, payable $2,000 in cash, the remainder on time to suit the purchaser's convenience: such deferred payment being secured by mortgage. The answer to this offer on which reliance is placed as a sufficient acceptance says: "We have decided to accept your proposition and are inclosing you herewith a check for $100.00 to bind the bargain. The balance of purchase price to be paid February 1, 1909, and give you a mortgage back for the difference at 6 per cent. interest payable on or before five years." It is evident that by the words "balance of purchase price" the writer refers to the remainder of the $2,000 which appellant required as a down payment. When this letter was received, appellant had been offered $12,000 for the property by a third person, and was thereby stimulated to ask from the appellee an increase of the purchase price to the amount of the cost of certain repairs then recently made on the building. Later in the same day he wrote again withdrawing from the transaction altogether, and returning the check for $100 which appellee had sent him. On receiving the first of these letters of January 7, 1909, appellee again writes, acquiescing, with some expressed dissatisfaction, in the increased demand, but adding the following clause: "We would like to have you send on the deed and abstract to the Iowa State Bank of Waterloo, Iowa, and when they are examined and found to be correct, your money will be turned over to you as per our letter accepting your propositions." Reduced, then, to its briefest terms, the question before us is whether the appellee's letters of December 31st and January 8th (Exhibits 2 and 4), or either of them, is an unconditional acceptance of the appellant's offer to sell, or whether the alleged acceptance is so qualified or conditioned that a complete agreement or meeting of minds was not effected.

It is conceded by the appellee that appellant's offer embodied no condition for the payment of earnest money, or for the extending the time of making the cash payment of $2,000 to February 1st, or for the furnishing of an abstract of title, or for the payment of the consideration or delivery of the deed at the bank of Waterloo, Iowa. These additional terms, say counsel for appellee, do not detract from the sufficiency of the acceptance because the buyer was entitled to a reasonable time to examine the title and arrange for the payment of the money, and February 1st was, in fact, a reasonable time for performance on his part, and that the reference to an abstract of title and the sending of the same to the bank in Waterloo for examination and approval were merely by way of suggestion or request and not as conditions attached to the acceptance. This view was adopted by the trial court, and the acceptance held to be sufficient and complete.

The question thus presented has been ably argued by counsel on either side, and the briefs submitted in support of their respective positions collate and discuss the respective authorities with a commendable degree of care and fairness. We have examined and re-examined the record in the light of this thorough presentation and of our own precedents bearing upon the principles involved, and our conclusion is not in accord with that announced by the learned trial court. If we do not misunderstand the position of appellee, it is that his letter of December 31st is a complete acceptance of the appellant's offer of December 30th, and that for the purpose of determining whether there was an enforceable contract the court may disregard entirely his letter of January 8th, and that the conditions or requests therein do not in any manner detract from the effect of such acceptance. But he further insists that even if the acceptance expressed in the letter of December 31st should be thought insufficient, or to have been superseded or abandoned, yet a complete acceptance is evidenced by the letter of January 8th, and that the same result

must follow should it be held that the two letters are to be considered together as forming part of the same transaction.

In chronological and natural order we first look to the letter of December 31st, and inquire whether its stipulations for paying an earnest of $100 and the remainder of the cash installment on February 1st adds anything to the alleged contract which it would not have contained had the appellee answered appellant's proposal by the single unequivocal statement: "Your letter of December 31st is received and I will purchase the land at the price and upon the terms therein stated, and that as you consent that the remainder of the price after deducting the down payment may be paid at my convenience I elect to have it become due at the end of five years from the delivery of your deed to me." Had this been the answer in substance of effect, its sufficiency as an acceptance would not be open to the slightest doubt. Instead of this, his answer may fairly be paraphrased as follows: "Your price and terms are satisfactory except that I do not wish to pay the down installment at once and will pay you. $100 now, $1,900 on February 1st, and the remainder in five years." Had the answer been in these words, its insufficiency as an acceptance would we think be equally clear. Yet how and in what manner does it depart from the clear meaning and effect of appellee's letter of December 31st? For appellee it is argued that, even if his acceptance had been clearly stated in the simplest and most unequivocal terms of acquiescence, he would still have had a reasonable time in which to reach the seller, and do the things which the contract required of him. Proceeding then from the standpoint of this conceded correct statement of the law, counsel say that February 1st was within the limits of such reasonable time, and that, therefore, its designation as the date upon which the purchase and sale stated should be consummated added nothing to the agreement which would not have been implied, had appellee not mentioned the matter at all. But this reasoning is not

satisfactory. It was competent for the parties to make no mention of the date when the papers should be exchanged and the sale perfected; each relying upon his implied right to a reasonable time in which to perform his undertaking. It was equally competent for them to agree upon a fixed or stated date for that purpose, and eliminate the question of reasonable time. Appellant by his letter of December 30th proposed a contract of the former kind, and in response thereto appellee proposed one of the latter. Under the proposed implied stipulation, the agreement would mature at any time within a reasonable period when the parties were prepared to perform their respective undertakings, and either party might then demand performance whether the time lapsed be long or short, but under the terms of the alleged acceptance, although appellee may have had the money in hand to pay the entire purchase price and have received absolute proof of the validity of the title within five or fifteen days, yet the appellant, though ready and willing to make the proper conveyance, could not rightfully demand or enforce performance until the arrival of the day which appellee had stipulated for in his acceptance. The implied right to a reasonable time where date of performance is not stipulated differs, therefore, very materially from an expressed right to perform on a specifically named date, even though it may happen that the time fixed by express stipulation is no more than might have proved reasonable under the circumstances. It follows of necessity that the two letters of December 30th and December 31st do not constitute a complete contract, and an action in equity to enforce such alleged agreement cannot be sustained. We take no issue whatever with the authorities cited by appellee holding that, in the absence of an express agreement fixing the time for performance of such a contract, there is an implied condition that the parties shall have reasonable opportunity therefor. This is clearly held in the precedents cited as well as in many others, but in no instance called to our attention has it been held, nor do we think there is an authority for the

proposition, that an offer of sale fixing no time of performance may be converted into an enforceable agreement to sell by an acceptance which adds a stipulation fixing a specific date in the future when the transaction shall be consummated. Such a response is not an acceptance of the very terms proposed, and the minds of the parties do not meet.

Passing, then, to the subsequent correspondence between the parties, it is even more difficult to find therein the acceptance or agreement necessary to a complete contract. It will be remembered that on January 7th appel-

2. SAME: abstract of title: place of payment: new conditions.

lant wrote appellee, asking him to increase the offer of $12,000 by assuming the cost of certain repairs. This, with some murmuring, appellee consented to do, but asks for deed and abstract to be sent to Waterloo, and adds that *"when they are examined and found correct your money will be turned over to you as per our letter accepting your proposition."* By this language appellee seeks to bring forward and import into his last attempt at an acceptance the very stipulation for time to February 1st which we have just held is in the nature of an added stipulation or condition not contemplated in the offer. If such new condition was sufficient to destroy the effect of the letter of December 31st as an acceptance of appellant's offer, it would seem to follow with equal certainty that the importation of the same condition into the second letter must be held to have the same effect.

But other and in our judgment insuperable objections arise to the sufficiency of the letter as an acceptance of appellant's offer. Its promise to "turn over" the purchase money is expressly conditioned upon the examination and approval of a deed and abstract which the appellant is asked to send to a bank selected and named by appellee in Waterloo, Iowa. In appellant's offer to sell, there is no statement or suggestion of willingness to furnish an abstract of title or to close the transaction by accepting payment or delivering deed at any

place other than that of his own place of residence. It is well settled that an offer to sell real property implies no offer or duty on the part of the seller to furnish the purchaser an abstract of title, and that, where no place is mentioned in the offer, the seller is not required to accept payment or deliver deed elsewhere than at his place of residence. Appellee concedes this to be the law, and that, if his letter is to be construed · as making the matter of an abstract of title or place of closing the deal an added stipulation of the contract, then his acceptance was insufficient. His contention is, as we have already said, that this clause of the letter constitutes no part of the acceptance, but is in the nature of a collateral or subsequent suggestion or request which the appellant was at liberty to refuse or grant without detracting in any way from the effect of the acceptance of his offer as expressed in the remainder of the letter. That a written acceptance which is otherwise complete is not neutralized or destroyed by a mere suggestion which is clearly not intended as a condition thereof is not to be denied. *Culton v. Gilchrist*, 92 Iowa, 718; *Phillips v. Moor*, 71 Me. 78; *Kreutzer v. Lynch*, 122 Wis. 474 (100 N. W. 887); *Curtis v. Land Co.*, 137 Wis. 341 (118 N. W. 853, 129 Am. St. Rep. 1068).

Of the proper application of this rule there is perhaps no more apt illustration than is afforded by *Phillips v. Moor, supra*, decided by the Maine court. There a buyer wrote the owner of hay offering to purchase it at $9.50 per ton, and to this the owner responded, saying he had hoped the offer would be at the rate of $10 per ton, and adding: "But you can take the hay at your price and when you get it hauled, if you can pay the ten dollars, I would like to have you do it if the hay proves good enough for the price." That this suggestion was not intended as an added term or condition of the contract is too clear for reasonable controversy. So, also, in the *Curtis* case, *supra*, the purchaser, after an unqualified acceptance of an offer, said: "If it is just as satisfactory to

you will you please send receipt to National Bank of Merril for collection," etc. The words there used, "If it is just as satisfactory to you," clearly indicate the buyer's recognition of the fact that the seller was entitled to require payment at his place of residence, and left it to his own option whether he would insist upon that right or accept payment at the place mentioned. But unless the so-called request or suggestion is a matter clearly apart from the acceptance, and the intention of the writer to declare his acceptance of the offer as made without regard to the matter of his request is apparent, the letter ought to be read as a whole, and words which fairly import a new or added condition to the terms proposed in the offer should be so construed and the acceptance be held insufficient. Controversies of this nature have quite often arisen over an acceptance or alleged acceptance in which the buyer calls for an abstract of title or names a place of performance other than such as the offer implies. Except in a few cases where the courts have been able to say that the buyer clearly intended to express an unqualified acceptance and mentioned the new matter merely as a request, compliance with which was not insisted upon, it has been universally held that such an acceptance is incomplete, and no contract obligation arises. *Lacey v. Thomas,* (C. C.) 164 Fed. 623; *Stearns v. Clapp,* 16 S. D. 558 (94 N. W. 430); *Ross v. Craven,* 84 Neb. 520 (121 N. W. 451); *Johnson v. Fecht,* 185 Mo. 335 (83 S. W. 1077); *Baker v. Holt,* 56 Wis. 100 (14 N. W. 8); *Hinish v. Oliver,* 66 Kan. 282 (71 Pac. 520); *De Jonge v. Hunt,* 103 Mich. 94 (61 N. W. 342); *Beiseker v. Amberson,* 17 N. D. 215 (116 N. W. 94); *Langellier v. Schaefer,* 36 Minn. 361 (31 N. W. 690); *Egger v. Nesbitt,* 122 Mo. 667 (27 S. W. 386, 43 Am. St. Rep. 596); *Sawyer v. Brossart,* 67 Iowa, 678 (25 N. W. 876, 56 Am. St. Rep. 371); *Batie v. Allison,* 77 Iowa, 315; *Foster v. Land Co.,* 2 Tex. Civ. App. 505 (22 S. W. 260); *Baker v. Johnson County,* 37 Iowa, 186.

It requires a somewhat heroic exercise of the court's authority to construe written instruments to draw a line of

distinction between the parts of appellee's letter, and say that
one is intended to be an unqualified acceptance
3. SAME.         of appellant's offer and, the other to be mere
request, compliance with which was not considered essential
to the contract. The language of the clause in question quite
clearly points to the opposite conclusion. True, it is couched
in the language of politeness, "We would like to have you
send on the deed and abstract," etc., but the following sentence,
"And when they are found to be correct your money will
be turned over to you," clearly reveals the intent to make
appellee's promise of payment contingent upon this call for
production in Waterloo of a deed and abstract which should
pass inspection and be found correct. Let us suppose that
appellant failed to answer this letter, and thereafter brought
suit against appellee to enforce the alleged sale; would not
the immediate and conclusive answer be 'that the acceptance
of the offer was conditioned upon the transmission of the deed
and abstract to the bank in Waterloo, and that this condition
had never been agreed to or performed? We think there can
be no doubt of it. Even a request which is so coupled with
an alleged acceptance as to require further correspondence or
negotiation before the parties may know with certainty what
each may be required to do to consummate the transaction is
held to render the acceptance insufficient. For example in
*De Jonge v. Hunt,* 103 Mich. 94 (61 N. W. 342), the defendant
residing in one state offered by letter to sell his land for a
stated sum to plaintiff, a resident of another state. The
plaintiff wrote in answer, accepting the offer, but requesting
that the deed be sent to a third party, with whom the money
would be deposited upon receipt of the conveyance. It was
held that the correspondence did not amount to a contract.
The court, after stating the facts above related, says: "It
became therefore necessary for defendant to write another
letter in order to close the transaction. It was to be a cash
transaction, and plaintiff's duty was to remit the money and
pay or tender it to him within a reasonable time after an

unqualified acceptance. A response necessitating delay and further correspondence is not an unqualified acceptance." A case of very similar character is decided by the Minnesota court in *Langellier v. Schaefer*, 36 Minn. 361 (31 N. W. 690), and the same rule applied. The court says in words which may be aptly applied to the case at bar: "It is true that plaintiff commences this letter by saying that he accepts the offer, but the whole letter must be read together to get at its meaning. He immediately proceeds to state the terms and conditions on which he accepts. We cannot assent to the proposition that all this part of the letter is to be construed not as attaching conditions to the acceptance but as mere suggestions." To like effect is *Baker v. Holt*, 56 Wis. 100 (14 N. W. 8), where, in response to argument that the designation of the place of payment and delivery of deed should be treated as mere suggestions and not as conditions of the acceptance, the court says: "We think the letter of plaintiff is not susceptible of the construction given it by the learned counsel. We are clearly of the opinion that defendant could not have compelled plaintiff to perform on his part, unless he had remitted the deed to the treasurer of Wood county." Our own case of *Sawyer v. Brossart*, 67 Iowa, 678, is quite in point, and the same principle has been affirmed by us on frequent occasions. In that case the acceptance was substantially as follows: "Your offer accepted. Money at your order at First National Bank here. Telegraph when to expect deed." If this condensed form of telegraphic communication should be expanded into the more voluminous expression ordinarily employed in letter writing, but without change of essential meaning, it would not differ very materially from the letter which the appellee in this case asks us to treat as a complete acceptance of the offer to sell, but we there held that no contract was shown. In *Batie v. Allison*, 77 Iowa, 315, we held that the addition to an acceptance of an offer to sell of the simple request or direction, "Notify us when and where to send the money," was such a qualification of the acceptance that no

contract was created. It is suggested by counsel that whether appellee intended to qualify his acceptance in the clause under consideration is a question of fact, and that usual consideration accorded by us to the trial court's findings of fact should work an affirmance of the decree below. It is only in a very qualified sense that the question can be considered one of fact. In this, as in other cases depending upon the meaning and effect of written instruments, the parties are presumed to have used words in their ordinary signification, and as a matter of law such effect must be given them unless the circumstances under which they were used indicate that another and different meaning was intended.

If these circumstances are a matter of dispute, and the intention of the parties is reduced to a question of the veracity or credibility of witnesses appearing before the trial court, we are always inclined to accord influence to the finding of the trial court thereon, even though the issue be triable here *de novo*. But such is not here the case. The defendant was not examined as a witness. The plaintiff was a witness, but nowhere attempts to explain the language of his alleged acceptance, or to state any circumstances bearing upon the meaning or effect of the correspondence, other than is revealed upon the face of the letters themselves. He in no manner disclaims or denies an intent that the production of the deed and abstract in Waterloo should be deemed a condition or term of the contract. It follows that the rule which appellee invokes has no application to this record. The writings upon which the entire controversy turns are before us precisely as they were before the trial court, and it is our duty to construe them in accordance with our conception of their real or apparent meaning. Of the cases cited by appellee—*Turner v. McCormick,* 56 W. Va. 161 (49 S. E. 28, 67 L. R. A. 853, 107 Am. St. Rep. 904) ; *Culton v. Gilchrist,* 92 Iowa, 718; *Curtis v. Land Co.,* 137 Wis. 341 (118 N. W. 853, 129 Am. St. Rep. 1068) ; *Kreutzer v. Lynch,* 122 Wis. 474 (100 N. W. 887) ; *Coy v. Railroad,* 116 Iowa,

4. SAME: findings of trial court: conclusiveness.

558; *Gough v. Loomis*, 123 Iowa, 646—none with the possible exception of *Turner v. McCormick*, decided in West Virginia, is inconsistent with our conclusions as we have already indicated them. They involve materially different states of fact, and most of them directly or indirectly approve the principles we have here announced. We cannot extend this opinion for the detailed examination of these precedents. It is probably true that the opinion in the *Turner* case just mentioned is in its argument and possibly in the decision an authority for the position taken by the appellee. It is to be said, however, that in the case at bar the added clause which we treat as a condition of the alleged acceptance is more open to that conclusion than the one which was before the West Virginia court, in that it not only proposes to fix a place for the delivery of the deed other than the place implied in the offer, but expresses a purpose to withhold payment of the purchase money until a deed and abstract should be furnished at Waterloo, and found correct. No such provision is found in the *Turner* case. But, whatever may be said in this respect, we think that adherence to our precedents as well as to what we believe to be the overwhelming weight of authority require us to hold that the correspondence in this case never culminated in an enforceable contract.

It should have been noticed in discussing the alleged acceptance in appellee's first letter that his counsel suggest that, as defendant in answering the same did not mention the proposal made to name February 1st as the day for performing the agreement, he must be held to have waived objection thereto, and consented to such amendment to the terms of sale. That would, of course, have been true had appellant's answer consented to a closing of the deal without further negotiation. He did not consent, but wrote appellee to secure an advance in the price of the property. This shows he did not understand that a contract had been arrived at, and was proceeding on the theory that proposition and counter proposition were still in

5. SAME: accept-ance: waiver of conditions.

order, and, until that stage was passed, we regard it clear there could be no waiver or consent of which either party could take advantage.

There are other features of the case not without importance and interest; but, as those we have considered are controlling of the result, we do not undertake their discussion. Finding as we do that there is shown no such meeting of the minds of the parties as will constitute a contract, the decree of the district court must be reversed, and plaintiff's bill dismissed.—*Reversed.*