**KVET BROADCASTING COMPANY, Inc.,**
**Appellant,**

v.

**Thomas TIEMANN et ux., Appellees.**

**No. 11704.**

Court of Civil Appeals of Texas.

Austin.

Oct. 29, 1969.

Rehearing Denied Dec. 3, 1969.

Mueller & Rowland, Robert A. Rowland, Austin, for appellant.

Joseph Latting, Coleman Gay, Austin, for appellees.

PHILLIPS, Chief Justice.

This suit was brought by the Appellees, Thomas Tiemann and wife against the broadcasting company, Appellant, to enforce specific performance of a contract for the sale of land.

The case was tried before a jury and in response to certain findings of fact the court rendered judgment for Appellees and decreed specific performance of the contract.

We affirm this judgment.

The contract in question was signed by the Appellant and given to a Mr. Leo Herzog, a licensed real estate broker, who took the signed offer to the Appellees on the 13th day of February, 1968. On February 15, the Appellees signed the offer.

Appellees assert that the contract was completed at this time and we agree.

Appellant takes the position that during the period between the time that the Appellees received the signed offer and the time they signed the offer, they had made two counter offers and that the Appellant

on at least two occasions withdrew its offer.

To be more specific, the Appellant was seeking to find and purchase a tract of land suitable for a television antenna tower. Late in 1967, Mr. Leo Herzog, a licensed real estate broker, was informed of the Appellant's need for land, and he and several other real estate brokers brought several tracts of land to the attention of Appellant during the months of December, 1967, and January and February, 1968. Herzog learned of Appellees' land during December of 1967, and he subsequently contacted Tiemann and found that it was available. Herzog contacted the Appellant and employees of Appellant sought to determine whether or not the property would be suitable. It appeared that the property would be suitable and contract negotiations were begun in January, 1968. Herzog first drew up a contract and submitted it to the Appellant. The Appellant's attorney revised the contract and submitted it to Herzog and to Appellees for suggestions and approval.

On February 13, 1968, a Mr. John Kreiger, president of Appellant Broadcasting Company, signed the contract made the subject of this action and delivered it to Herzog for delivery to the Tiemanns. It was identical to the contract previously submitted to Mr. and Mrs. Tiemann except that the purchase price was reduced from $3,000.00 per acre to $2,650.00 per acre. It is at this point that the controversy arose.

Appellant contends that shortly after delivering the contract to Herzog, Kreiger attempted to contact Herzog to tell him the offer was withdrawn. At about the same time, Herzog was delivering the contract to Tiemann. Tiemann was disappointed in the price change and told Herzog he would have to think about it. A short time later Tiemann, after consulting with his wife, parents and attorney, called Herzog and requested that Herzog contact the Appellant and see if they would "split the difference" or pay $2,825.00 an acre for the land.

At this point, the facts are in dispute. Appellant contends that Kreiger told Herzog to hold up everything; that the offer was withdrawn for the time being; that Herzog and Tiemann had at least two conversations subsequent to Kreiger's statement of withdrawal, and that during the second conversation, Tiemann made a second counter proposal to be presented to the Appellant; that he requested Herzog to see as an "alternative" if the Appellant would consider a 7 percent interest rate on the note provided for in the contract; that Herzog called Kreiger and informed him of Tiemann's proposal for 7 percent interest on the note, and that Kreiger again told Herzog that the offer was withdrawn; that this conversation took place on the evening of February 14th, and that sometime during the afternoon of February 15th, the Tiemanns signed the contract; that the appellees demanded the Appellant perform the contract and when Appellant refused, the lawsuit was filed.

Appellants are before us with six points of error. The first two, briefed together, are the error of the court in failing to grant Appellant's motions for instructed verdict and for judgment after the jury was discharged; in failing to hold that the plaintiffs had rejected the offer of Appellant before acceptance by twice making counter offers to the Appellant.

We overrule these points.

The record discloses that Appellant's attorney drew the contract tendered Appellees and this contract contained a provision for specific performance in case of a breach.

The only two witnesses to the alleged counter offers were Herzog and Appellees. All of Appellees' transactions with Appellant had been carried out through Herzog. Appellee was understandably disappointed when the signed contract was presented to him showing that Appellant would pay only $2,650 per acre for the land and in this

regard the testimony discloses that the following conversation ensued:

"MR. HERZOG: * * * I asked him what he wanted me to do about it. Did he want me to take it back to K.V.E.T. and tell them to forget about it, and he said, 'No, I don't want you to take it back. I want to talk about it with my wife.'

MR. TIEMANN: He [Mr. Herzog] said, 'You may not like this because the figure we have been talking about of three thousand an acre is now twenty-six fifty an acre, and he asked me what I would like to do about it.' *I told him I would like to have time to think about it.*" (Emphasis supplied)

Appellees did not reject the contract; on the contrary, they retained it in their possession. This testimony is quite important in view of the theory urged by Appellant that a counter offer revokes the original offer and is in itself a refusal of that offer.

The testimony of Herzog and Tiemann as to splitting the difference between the original talking figure of $3,000 per acre and the figure of $2,650 is as follows:

"MR. HERZOG: I guess he [Mr. Tiemann] called me later on that day. He said that he was thinking about it pretty strongly. He said, 'Do you think that K.V.E.T. would split the difference on the twenty-six fifty to $3,000 which would be twenty-eight twenty-five?'

MR. TIEMANN: I called Mr. Herzog back and asked him if he would ask K.V.E.T. if they would consider splitting the difference between the two figures."

The other counter offer urged by Appellant had to do with an inquiry regarding an interest rate of 7% on the deferred balance instead of 6% as Appellant proposed in the contract. On this point the testimony was:

"MR. HERZOG: He [Mr. Tiemann] called me and * * * he wanted to know if maybe they would take seven percent interest instead of six percent to offset some of the difference * * * [in price.]

MR. TIEMANN: I called Mr. Herzog back * * * and I asked him if as an alternative they would consider a seven percent interest rate."

Appellant contends that the law of this State is that a counter offer relating to the same subject matter as the original offer, is a rejection of the original offer citing King v. Kloh, 10 S.W.2d 1043 (Tex.Civ. App., El Paso, 1928, writ dism'd); Legal Security Life Insurance Company v. Ward, 373 S.W.2d 693 (Tex.Civ.App., Austin 1963, no writ); J. M. Radford Grocery Co. v. Noyes, 293 S.W. 653 (Tex.Civ.App., Austin 1927, no writ). These cases correctly decide the facts before them; however, they are not in point here. The statements made by Tiemann as well as his actions in connection therewith indicate that he did not reject the original offer tendered but took it under advisement and at the same time made several inquiries of Appellant and such inquiries were made before acceptance or rejection. 17 Am.Jur.2d 378, Sec. 39; Turner v. McCormick, 56 W.Va. 161, 49 S.E. 28, 67 L.R.A. 853.

In arriving at this conclusion we took notice of Am.Law Institute, Contracts, Restatement No. 1, Sec. 38, cited in *Radford*, above, to the effect that a counter offer by the offeree, relating to the same subject matter as the original offer, is a rejection of the original offer, unless the offeree at the same time states in express terms that he is still keeping the original offer under consideration. We hold, however, that the Appellee Tiemann's words and acts bring his case under the law relating to inquiries rather than that of a counter offer. His language was that of inquiry rather than promise.

Appellant's third, fourth and fifth points of error, briefed together, are: the error of the court in granting plaintiff's motion for judgment when the evidence presented fact issues in regard to Appel-

lant's withdrawal of its offer to Appellees, said fact issue having been submitted to the jury in special issues, but not answered; in refusing to submit to the jury Appellant's requested special issue No. 1; in refusing to submit to the jury Appellant's requested special issue No.4.

We overrule these points.

Appellant's requested special issue No. 1 inquired as to whether Herzog was a special agent of Appellees "for the purpose of taking to and receiving communications from" Appellees. This issue was refused by the court. Appellant's requested special issue No. 4, which was also refused, inquired as to whether Herzog was the special agent of both Appellees and Appellant for the purpose of transmitting communications between the parties to the transaction.

Appellant contends that its offer was no longer open on February 15 because Appellant had withdrawn it, not once, but twice, in the 48 hour period before it was accepted by Appellees. It is Appellant's contention that such notice of withdrawal was given to Herzog, the broker in the transaction, and that notice of the withdrawal to Herzog was notice to Appellees since Appellees had made him their agent for communication with Appellant. It was not contended that the alleged withdrawal was communicated to anyone other than Herzog. Both Herzog and Tiemann deny that notice of the withdrawal of the offer was ever communicated to either one of them.

Appellant's theory that Herzog was Appellees' agent with respect to the alleged withdrawal of the offer is reached by Appellees' request of Herzog that he inquire of Appellant whether it would pay $2,825 per acre and, later whether it would pay a higher interest rate on the deferred portion of the consideration; that in so authorizing Herzog to make these inquiries, they impliedly authorized him to report back to them Appellant's reaction to the inquiries; that in connection with these inquiries Appellant withdrew the offer, thus

Herzog was impliedly authorized to communicate such withdrawal to them, and accordingly, notice to him was notice to Appellees. In support of this theory, Appellant cites us to Western Union Telegram Co. v. Gardner, 278 S.W. 278 (Tex.Civ. App., Dallas, 1925, writ dism'd) as authority for the proposition that selecting a medium through which an acceptance (answer in the instant case) is to be received, makes the medium his agent for such purpose.

We cannot agree with Appellant here. The only provisions in the contract regarding Herzog's agency are his signature to the instrument as "Escrow Agent," and a recital that Leo Herzog and Company is the procuring cause of the sale for which the seller would pay said agent a commission of 6% of the sale price and a further provision that "Seller affirms Agent's right to sell the above described property."

██ Double agency is a well accepted principle of law. Jacks v. Manning, 297 S.W. 588 (Tex.Civ.App., Austin, 1927, no writ); however, at best Herzog could have been Tiemann's agent only with respect to answers to Tiemann's inquiries. With respect to something entirely new such as a withdrawal of the offer initiated by Appellant, he became Appellant's agent. Consequently any knowledge he may have had concerning the withdrawal cannot be attributed to Appellee.

Appellant's sixth point of error is that of the court in failing to hold that the contract made the basis of this action was unenforceable and void for the reason that it was too vague and general.

We overrule this point.

Appellant directs us to the following clause in the contract:

"It is further understood and agreed that this contract is further contingent upon the Purchaser's being able to secure additional acreage necessary to complete the land needed for the construction of a television tower and transmitter, such

land being described (describing land to be acquired)"

The alleged uncertainty set out above has no reference to the provisions of the contract that this Court is called upon to enforce. That contract is perfectly clear. The condition set out above was a condition precedent which, had Appellant been able to allege and prove, to be impossible of accomplishment, would have released him from the contract. However, this was not done. Instead, Appellant refused to honor the contract and stopped payment on the escrow check. Thus the contract was repudiated and since the fulfillment of the condition was a duty borne by the Appellant, his own repudiation released the Appellee sellers from any further burden they may have had with respect thereto. Hild v. Linne, 45 Tex. 476 (Tex. 1876), 81 C.J.S. Specific Performance § 96, p. 616.

The judgment of the trial court is affirmed.

Affirmed.