VERONICA REICHART, Appellee, v. GEORGE A. ROMEY, Appel-
lant.

Contract for sale of land: AGENCY: AUTHORITY OF AGENT: EVIDENCE.
1   In this action to set aside a land contract, made by plaintiff's agent,
    and to remove the cloud thereof from the plaintiff's title, the evi-
    dence consisting of correspondence is held insufficient to bind the
    plaintiff to certain terms and conditions of the contract, which were
    unauthorized.

Same:   UNAUTHORIZED CONTRACT:   RATIFICATION.   Where plaintiff's
2   agent sent her for execution a contract for the sale of her land,
    which she refused to sign, she did not thereby waive the assumed
    authority of the agent in making a contract of sale for her by
    omitting to specify her precise ground of the objection to the con-
    tract; there being nothing to apprise her that the agent had as-
    sumed to bind her in advance of her own execution of the contract.

Same:   ENFORCEMENT OF AGENT'S UNAUTHORIZED CONTRACT.   Where the
3   owner of land refused to execute a contract of sale negotiated by
    an agent, which contained provisions in excess of his authority to
    make, the agent's oral contract of sale on substantially the same
    terms was not enforceable.

Same:   FRAUD:   ESTOPPEL.   Where a purchaser of land through an agent
4   prepared and forwarded to the owner for execution a written con-
    tract of sale containing provisions, which the agent was not author-
    ized to make, and which the owner refused to sign, the purchaser
    could not enforce an oral contract of sale made by the agent with-
    out the owner's knowledge, even though within his authority; as
    withholding from the owner knowledge of the agent's oral contract
    when sending the written contract for execution was a fraud.

*Appeal from Ósceola District Court.*—HON. WM. HUTCHIN-
SON, Judge.

THURSDAY, NOVEMBER 5, 1914.

A SUIT in equity to set aside a purported contract of sale
of land, and to remove the cloud thereof from the plaintiff's

title. There was a cross-bill by the defendant, asking the specific performance of such contract. Decree for plaintiff, and defendant appeals.—*Affirmed.*

*O. J. Clark* and *T. E. Diamond,* for appellant.

*E. A. Morling, Francis & Owen,* for appellee.

EVANS, J.—The transaction out of which this action arose occurred in August, 1912. The plaintiff was a resident of Waterloo, Canada. She owned a quarter section of land in Osceola county, Iowa, and desired to sell the same. Her resident agent was Fred Mayer, who had looked after the land for her for many years, and who, as agent, had sold it to her originally. In pursuance of certain correspondence hereinafter set forth, Mayer purported to sell the land by written contract to the defendant herein. The contract was made in duplicate, and one draft thereof duly signed by the defendant was sent to the plaintiff for her signature. She repudiated the purported contract and refused to sign it. Thereupon the defendant caused the other draft of the contract to be signed and acknowledged by Mayer, as alleged agent of the plaintiff, and filed the same for record.

The pivotal question in the case is whether the purported contract exceeded the authority of the agent. If it did, it cannot be enforced. The correspondence upon which the authority of the agent was based was submit-

1. CONTRACT FOR
SALE OF LAND:
agency: au-
thority of
agent: evi-
dence.

ted to the defendant before the purported contract was entered into, and such contract was prepared by the defendant after an inspection of plaintiff's letters.

The correspondence was as follows, the signature of the plaintiff appearing therein as "Fannie":

Exhibit 1.
Waterloo, Aug. 1, 1912.

Dear Friend: Just received your letter. You will have mine by now. To tell you the truth I was a little disappointed

at the offer. Thinking of course I would get more. You remember in your letter of April 22d, you said you were asking $12,000, but that you hoped you would get more, so $11,250 seemed quite a drop. Now I am not dictating to you for I am sure you will do the best you can for me, but you understand that I would be disappointed, and then too, while at Winnipeg I met a man and his wife who had relatives in Hartley and just came from there. They are looking around for some land for their boys and they were all through there and he seemed to think I would get $80 per acre. Of course I told him about my buildings not being the best and that the land needed tiling. He said this is a good year for crops. Now you will have to do just what you think best, I am pretty sure you will do your best for me. Hoping to hear from you soon, I want this to go with the next mail, so will close.

Sincerely yours,                          [Signed]  Fannie.

Exhibit 2.

Waterloo, Aug. 9, 1912.

Dear Friend: Yours of the 6th just received. With the same mail also came a letter from a man near there wanting to know if I wanted to sell my farm as he had been told it was in the market and would I take in the neighborhood of $12,000. I wrote him at once telling him I had a friend out there who was looking after it for me, so may not be troubled with him again. Now Fred, I do think the way things are going and good crops I ought at least to get $12,000. Don't you think if you hold out a little longer I would get that? In case I am offered the $12,000, I mean from some one else, should I take it? I bought through you and really would like to sell through you. At the same time, if I were offered that it seems to me I ought to take it. I really believe Fred, you will get your $12,000, if you hold out a little. I am willing to wait but of course as you say the plowing must soon be done. Let us hope for the best and let me hear again.

[The balance of the letter is about social matters, and not necessary to set forth.]

Yours as ever,                           [Signed]  Fannie.

Exhibit 3.

Waterloo, Aug. 11, 1912.

Dear Friend: You will be surprised to hear from me so soon again but I just had an offer for my land from over there

for $12,000.    $1,000 cash, two or three thousand March 1st, and take a mortgage for balance at five per cent int., for five years.   Now what shall I do?   Surely when I am offered that I should take it, don't you think so?   The land must be worth that or I would not be offered that.   Please let me know soon what I shall do, as I will have to let them know.

Please excuse this haste.   John Schwint is passing through to Bridgeport and will take this.

Yours as ever,                          [Signed]   Fannie.

Exhibit 4.

Hartley, Iowa, August 10, 1912.

Miss V. Reichart, Dear Friend:   One offer more, one of them offered $12,000, and the income of this year.   I told them as I wand the income fer you so I had id.   This makes a total of $12,000, and about $500 or $600 fer your share of grain.   Now my friend led me know quick if you are satisfied or not if not id will be time to rent id away.   And it is quite late to ged a good renter.   If you want to come over yourself and not quite ready, I will send contract over and you may sign same or you may led me know by writing and then I can close the deal, as the party have some other farms in his mind, but if you think to keep the farm led me know also, this is the best offer I can ged ad present.   You can keep your deed in your hands then you are dead sure for your money on the farm, so I hope to hear of you soon.

Yours,                          [Signed]   F. Mayer.

Exhibit 5.

Waterloo, Aug. 15, 1912.

Dear Friend:   Just received yours of the 10th, evidently the people over there know I want to sell my farm.   I had another offer yesterday offering $200 more.   Now I want you to sell it and I know you can.   Your offer today is $12,000. Now can you make commission out of that, if so, go ahead. I am sure you can get that much more.   If you think I better go I will go.   Just let me know.   Now if I go, which way? and would I gain any time by taking a return ticket.   We have had lots of rain lately.   Will close now, so you will get soon.

Yours in a hurry,                          [Signed]   Fannie.

The written contract entered into with the agent was as follows:

Copy of Exhibit A.

This agreement made this Aug. 18th, 1912, between Veronica Reichart, Waterloo, Canada, party of the first part, and Geo. A. Romey, of the county of Osceola, and state of Iowa, of the second part, witnesseth, that party of the first part hereby agrees to sell to the party of the second part on performance of the agreement of the party of the second part as hereinafter mentioned, the following described real estate, situated in the county of Osceola, and state of Iowa, to wit: The southeast quarter of section number three (3), Twp. 98, range, 39, for the sum of twelve thousand dollars, payable as hereinafter mentioned, and the said party of the second part, in consideration of the premises, hereby agrees to and with the party of the first part, to purchase the real estate above described, for the sum of twelve thousand dollars, and to pay the said sum therefor to the party of the first part, his heirs or assigns, as follows: One thousand dollars on the execution of this agreement and the balance of $11,000, as follows, to wit: $2,000 on March first, 1913, on or before, without interest; $9,000 on or before March 1st, 1918, at 5 per cent annual interest; taxes of 1912 to be paid by the first party, and an abstract showing good and perfect title is to be furnished to first party. No deed to be given until one-half has been paid, and a mortgage will then be given for the remainder; possession to be given March 1st, 1913. Buildings to be kept insured up to said time. And the party of the second part will annually pay taxes, etc. [Balance of contract is the ordinary printed form, over which there is no contention, so omitted.]

It will be noted that the controlling letters in the correspondence which fixed the authority of the agent were Exhibits 4 and 5, and more particularly the latter. Exhibit 5 is a qualified acceptance of the offer contained in Exhibit 4, requiring Mayer to get his commission out of the purchaser.

It is too plain for argument that some of the terms and conditions specified in the written contract above set forth were wholly without authority. It is quite needless to cite authorities to this proposition, but see the following: *Gilbert v. Baxter,* 71 Iowa, 331-332; *Wilken v. Voss,* 120 Iowa, 503;

*Staten v. Hammer,* 121 Iowa, 500-501; *Hunt v. Tuttle,* 133 Iowa, 649; *Knox v. McMurray,* 159 Iowa, 171.

The defendant relies upon Exhibit 3 as furnishing authority for the stipulation for deferred payments. It will be noted that this letter was only a recital of a certain offer that had been made to the plaintiff by another. Though the offer was deemed attractive, it was not, in fact, accepted by her. This letter was dated August 11th. It had nothing to do with the offer which Mayer had mailed under date of August 10th. The time of the mail between the two points was about three days. Exhibit 5, plaintiff's letter of August 15th, was a direct response to Mayer's letter of August 10th. It is conceded on both sides that land in the neighborhood was rising rapidly, and agents and sellers and buyers could hardly keep up with it. When the defendant secured the contract of sale he put the land upon the market at $110 per acre. The testimony in the record as to the actual value of the land at that particular time shows a range from $85 to $100 per acre. The plaintiff herself was receiving letters and offers from various persons, the latest offer being always the largest. The fact, therefore, that the plaintiff might have been willing to accept modified terms on one day was not evidence of her willingness to do so on the later date. In any event, it was a mere inference on the part of Mayer and the defendant that she would consent to such terms, because of the recital in the letter, Exhibit 3.

It is also urged by the defendant that the plaintiff waived the excess of authority on the part of her agent by failing to make specific objection to that effect. She did refuse to sign the contract. There was no burden of specification upon her. The burden was upon the defendant to show that the contract held by him was within the authority of the agent. The contract was sent to her by the agent for her signature. The signature of the agent was not attached thereto. There was nothing in the contract nor in the letter accompanying the same indicating that the agent had assumed to bind her in advance of her

2. SAME: unauthorized contract: ratification.

own execution of the contract. So far as she knew, the contract was sent to her for her own approval and assent as a condition to its consummation. We think, therefore, that she was clearly within her rights by her refusal to sign.

II. By a second count to his cross-bill, the defendant sets up his purchase of the land by oral contract from the agent, and asks specific performance thereof in case the written contract is held to be void. The terms of the oral contract as pleaded in such count are ,substantially the same as those contained in the written contract. Mayer was no more authorized to agree orally to such terms than that he should agree to the same in writing.

3. SAME: enforcement of agents unauthorized contract.

It is clear, also, that the written contract prepared by the defendant and sent to the plaintiff was conclusive upon him. It was the only contract presented to the plaintiff for her approval; she was never notified of any other. If an oral contract had been made between the parties whose terms were within the authority of the agent, then it was a fraud upon her to withhold such fact from her knowledge, and to send to her the written contract under consideration, for her signature.

4. SAME: fraud: estoppel.

The trial court properly set aside the written contract in question, and properly refused relief to the defendant. The decree below is therefore—*Affirmed*.

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.