BERT E. MITCHELL, Appellant, v. HERMAN HAGGE et al., Appellees.

**BROKERS:** Authority—Closing Sale at Point Other Than Owner's
1   **Residence.** A naked authority to effect a sale of land implies no authority to contract for the payment of the purchase price at a point other than the residence of the owner.

**BROKERS:** Authority—Disregard of Authority—Varying Times of
2   **Payments.** A broker employed to negotiate a sale of lands must,

in order to enter into a valid, enforceable contract, obey instructions. Any unratified material departure therefrom,—such as varying the times and amounts of payments,—vitiates the contract negotiated by him.

BROKERS:  Authority—Agreement to Furnish Abstract.  A naked
3  authority to effect the sale of land carries no implied authority in the broker to bind the owner to furnish a satisfactory abstract of title.

BROKERS:  Authority—Authorized Oral Contract Unknown to
4  Owner—Effect.  One may not enforce an *oral* contract for the purchase of lands, made with an agent of such owner and in strict compliance with the agent's authority, when the only contract tendered to, or brought to the attention of, the owner, prior to his sale to another party, was a written one *in excess of the agent's authority.*

BROKERS:  Authority—Exclusive Authority to Sell—Sale by Owner.
5  Principle recognized that exclusive authority to an agent or broker to effect a sale of land does not, of itself, deprive the owner of the right to effect a sale, independent of such agent.

*Appeal from Crawford District Court.—E. G. ALBERT, Judge.*

SATURDAY, DECEMBER 16, 1916.

SUIT in equity to cancel a contract between defendant Herman Hagge, and Thos. Jochimsen, for the sale of certain lands now claimed by plaintiff. The trial court denied the relief asked by plaintiff, and he appeals.—*Affirmed.*

*Maurice O'Connor* and *J. P. Conner,* for appellant.

*Sims & Kuehnle,* for appellees.

DEEMER, J.—Defendant Hagge, a resident of South Dakota, at one time owned the land in controversy, consisting of 160 acres, in Crawford County, Iowa. This land was in possession of one Mitchell, a tenant of Hagge's. E. J. Peters was a banker and real estate agent in the town of West Side, which was not far from the land, and he, Peters, solicited

an agency for the sale of the farm. In response to Peters' request, Hagge wrote the following letter:

"Mitchell, S. Dak., April 13, 1914.

"Mr. E. J. Peters, West Side, Iowa. Dear Sir: Yours of the 11th at hand, and would say in regard to the terms and price of the farm will take $150 per acre, $1,000 on day of contract and $4,000 March 1st, 1915, and $1,000 March 1st, 1916, and $2,000, 1917, and $2,000 1918, and $1,000 March 1st, 1919, and the balance in 5 years at 6 per cent interest, and it can be renewed after the time expires. I have listed it with some parties so I could not sign your land list, but if you sell the farm I will pay you $1 per acre commission for selling it.

"Yours truly, Herman Hagge."

Pursuant to the authority conferred by this letter, Peters undertook to sell the land to plaintiff, Mitchell; and it is claimed that, on April 17th, 1914, a sale was made to plaintiff by Peters, in accordance with the terms of the letter. A written contract in duplicate was drawn up, signed by Mitchell, and forwarded to Hagge for his signature, with the request that he sign and return one copy.

On the same day, and after plaintiff had left Peters' office, one Thomsen, a real estate agent at Manning, which town was not far from the farm, appeared upon the premises, with defendant Jochimsen. They looked over the land, and there met Mitchell, who informed them that he had purchased the land that morning. During the evening of the same day, Thomsen called up Peters and inquired about the deal, and Peters told Thomsen that he had that day sold the land to Mitchell. Early the next morning, Thomsen wired Hagge as follows:

"Manning, Iowa, Apr. 18, 1914.

"Herman Hagge, Mail Route 1, Mitchell, S. Dak. I have man want to pay you $150 per acre, cash, first next

March for the quarter. While looking on farm renter said he had bought the farm over phone. Wire me at once which deal you consider.

"8:15 A. M. 18th.                    L. Thomsen."

In the afternoon of the same day, Hagge answered as follows:

"Mitchell, S. Dak., Apr. 18, 1914.

"Received at 3:35 P. M. I accept your offer for quarter, provided he pays enough down on day of contract.

"Herman Hagge."

Some two or three days thereafter, Hagge wrote Peters as follows:

"Mitchell, S. Dak., Apr. 22d, 1914.

"Mr. E. J. Peters, West Side, Iowa. Dear Sir: We received a telegram from L. Thomsen, April 18th and received your papers on Monday, April 20th, so I wired L. Thomsen Saturday afternoon, April 18th, that we would accept his offer. Yours truly,                    Herman Hagge."

Peters responded with two messages, as follows:

"Vail, Iowa, Apr. 25th, 1914.

"Herman Hagge, Mitchell, S. Dak. Sale to Mitchell was made before other sale. Mitchell insists on forcing contract and threatens suit against you. Wire me at once before suit begins.                    E. J. Peters, Cashr."

"Vail, Iowa, Apr. 23d, 1914.

"We claim our sale on land ahead of Jochimsen sale.

"E. J. Peters, Cashr."

On April 19th, of the same year, Thomsen made out a written contract for the sale of the land to Jochimsen, who signed the same, and it was then forwarded to Hagge, who subsequently signed it, and returned a copy to Jochimsen.

This action is to cancel and set aside the contract between Hagge and Jochimsen, made through the agency of Thomsen, and to establish and confirm the sale to plaintiff.

There can be no doubt that Hagge gave Peters authority to find a purchaser for, or to sell the lands in controversy, upon the terms stated in the first letter quoted; but Peters was not given an exclusive agency; and, if the contract of sale made by him to plaintiff is binding on the owner, then plaintiff is entitled to recover; for his purchase, if he made one, was first in point of time, and Jochimsen had knowledge thereof at the time of his purchase from the owner. The sole question in the case then is, Did plaintiff enter into a valid contract for the purchase of the land?

Hagge gave his terms to the agent, Peters; but defendants contend that Peters, in making the written contract with plaintiff, Mitchell, which contract was the only one submitted to Hagge, for the purchase of the land by Mitchell, exceeded his authority, in that: First, payments of the purchase price were to be made at West Side, Iowa, instead of at Mitchell, Hagge's place of residence; second, Mitchell was given the option to make payments in advance of the time fixed in the letter of authority; and, third, that, by the terms of the written contract, Hagge was to furnish a warranty deed and satisfactory abstract of title.

The contract which Mitchell signed, and which was the only one presented to Hagge, provided, in substance:

"(a) Payments to be made at Farmers' State Bank, West Side, Iowa.

"(b) Mitchell to have 'the right to pay as much additional on March 1, 1915, as he might wish to, and to pay in sums of one hundred or any multiple thereof on any interest pay day.'

"(c) Upon request of Mitchell, after certain payments, Hagge and wife were to convey the premises in controversy in fee simple 'with the ordinary covenants of warranty and satisfactory abstract of title.'"

It is manifest that, in these respects, Peters exceeded his authority. Nothing being said in the letter of authorization regarding place of payment, Peters had no authority to provide for payment at any other place than the residence of the owner. *Sawyer v. Brossart*, 67 Iowa 678; *Egger v. Nesbitt* (Mo.), 43 Am. St. R. 596, 602.

*1. BROKERS: authority: closing sale at point other than owner's residence.*

Again, Peters had no authority to provide for payments at any other time, or in any other amounts, than were stated in the first letter of Hagge fixing his price and terms. It is often an advantage to have deferred payments of the purchase price so fixed as to draw interest for stated periods, in order that they may constantly be earning something, and it is for the owner, and not the agent, to fix the time and amount thereof. If no time or amounts be fixed, then the sale is presumptively to be made for cash; but if the owner fixes the amounts and times of payment, the agent must make his sale in conformity therewith.

*2. BROKERS: authority: disregard of authority: varying times of payments.*

Again, whilst the agent would, perhaps, have authority to provide for the execution of a warranty deed, he had no express authority to agree to furnish a satisfactory abstract of title. As he had no express authority to do this, none will be implied. *Staten v. Hammer*, 121 Iowa 499, 501, is an authority in support of the last two propositions.

*3. BROKERS: authority: agreement to furnish abstract.*

It is said, however, that Mitchell orally agreed to purchase the lands on the exact terms stated in the letter of authorization, and was ready, able and willing to make the purchase. The trouble with this proposition is that Hagge, the owner, was not advised of that fact. All that he knew of the matter was embodied in the contract, a duplicate of which was sent him for his signature. In such circumstances, plaintiff cannot rely upon an oral agreement to purchase. *Reichart v. Romey*, 167 Iowa 252.

*4. BROKERS: authority: authorized oral contract unknown to owner: effect.*

Peters did not have an exclusive agency; and, if he had, this did not deprive the owner of his right to sell to another. *McPike v. Siver,* 168 Iowa 149; *Ingold v. Symonds,* 125 Iowa 82. This is not an action for damages on the part of the agent, but an attempt on the part of a supposed purchaser to cancel a contract made by another agent, which was accepted by the owner.

5. BROKERS: authority: exclusive authority to sell: sale by owner.

It is manifest that the trial court was right in denying the relief asked. The judgment is, therefore—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.