MARY H. SHAW v. A. B. WILLIAMS.

*Evidence—Restricted Agency—Deed; recital of Receipt of Purchase Money in.*

1. Where defendant relies upon a payment made by him to plaintiff's agent, as possession of authority by the agent is essential to the defence, and must be shown, so restrictions imposed upon the agent's authority may be shown as essential parts of it; and such restrictions can be proven, although they were never communicated to the defendant.

2. A, B and C, jointly owned a parcel of land. . A and B orally empowered C to sell the land at a fixed price to defendant. C made the sale, and afterwards A, B and C, executed a joint deed to the defendant, which contained the usual recital of receipt of the purchase money. The deed, with the assent of all, was delivered to defendant by B. The defendant paid A's share of the purchase money to C, who never paid it to A. A had instructed C not to receive her share of the money, but to leave it with defendant until she called for it. Defendant did not know of these instructions; *Held*, that A could recover her share of the purchase money from defendant. *At law*, a recovery cannot be had of purchase money, the receipt of which is recited in a deed. But in equity, this obstacle is removed when the recital results from inadvertence, and was inserted under a mistake of its legal effect, without any intention of the parties that it should bar a recovery of the purchase money.

CIVIL ACTION, tried before *Clark, J.*, and a jury, at May Term, 1887, of CUMBERLAND Superior Court.

Judgment for plaintiff. Appeal by defendant.

The facts appear in the opinion.

*Mr. R. P. Buxton*, for the plaintiff.
*Mr. N. M. Ray*, for the defendant.

SMITH, C. J. The plaintiff, her sister Jane S., who had intermarried with one W. W. Graham, and her brother, John W. Jenkins, being tenants in common of an estate in fee in a house and lot in the town of Fayetteville, the latter, with the consent and by the verbal authority of the others, contracted with the defendant for the sale of the premises to him for the sum of nine hundred dollars. A deed, bearing date September 3d, 1883, was executed and delivered to the defendant some two years thereafter, conveying the lot, and in the usual form acknowledging payment of the consideration, and releasing the defendant therefrom.

The plaintiff, not having received her share of the proceeds of sale, on the 3d day of May, 1884, instituted this ac-

tion to recover the same, alleging, in her complaint, that while she authorized her brother to make the contract, and did not now repudiate it, he was not to receive her third of the purchase money, and that this restriction was put upon his power to act in her behalf, when it was conferred.

The answer of the defendant denies his liability, alleging that he paid the plaintiff's portion of the purchase money to the said Jenkins, as well as his own, and went into possession, and continued to occupy the premises under the contract, from the time it was made, until the execution of the deed, on November 10th, 1883, recognizing the full agency of said Jenkins to consummate the contract, including his receipt of the money due to the plaintiff, and without any communication with her about the matter, or information of any limitation upon his authority.

The defendant relies also upon the acknowledgment of the payment of the consideration, and his release therefrom, contained in the recitals in the deed. Issues were drawn from the pleadings and submitted to the jury, which, with the several responses, are as follows:

(1.) Was Jenkins authorized by plaintiff to receive the purchase money as her agent? Answer. No.

(2.) Was the purchase money paid by defendant to Jenkins? Answer. Yes.

(3.) Did plaintiff ratify such payment to Jenkins? Answer. No.

(4.) Was the signature of plaintiff to deed procured by defendant by ignorance and surprise? Answer. No.

(5.) Is plaintiff indebted to defendant by way of counter-claim; if so, how much? Answer. No.

The plaintiff testified on her own behalf. Having stated that, in the year 1881, she authorized her brother to sell the house and lot to the defendant for $900.00, but not to receive her share of the purchase money, she was asked what were her instructions to him in regard to her share of the money? The

question was objected to by defendant's counsel, on the ground that the limitations upon the agent's authority, proposed to be shown, were not communicated to him. The objection was overruled, and the witness answered: "My instructions to my brother John were, to leave my share of the purchase money on interest with Mr. Williams until called for."

1. To this ruling the first exception is taken. As the possession of authority to conclude the sale, and receive the funds belonging to the plaintiff is essential to the defence, and must be inferred or directly shown, so its intent, under imposed restrictions, may be an essential part of it. If proof be given of the conferring of any authority to act, it must, to be full and complete, admit evidence of the limitations put upon its exercise. The answer was, therefore, admissible, whatever may be its effect upon the defendant, to whom the limitations were not communicated; and this is quite another question, not involved in the admission of the answer.

2. The witness further testified, that on the 10th day of November, 1883, she went, at the request of her brother, to his house, four miles distant from her own, where she found him, his wife, one James M. Smith, the father of the latter, and J. B. Smith, a Justice of the Peace, and the deed, which had been executed by W. W. Graham and wife in September previous, lying on the table. It had just been signed by her brother and his wife, and she herself then signed it, saying to him, "I want you to go with me next Tuesday to Mr. Williams to get my money." He promised to do so, but never came for her; nor has she ever received any goods or provisions, nor had her brother any right to take up any for her of the defendant, or make a debt of any kind with him on her account.

The witness was then asked by her counsel, if she knew, when signing the deed, the legal effect of the clauses acknowledging payment, and acquitting the defendant of lia-

bility therefor. The answer, that she did not, was received solely as bearing on the issue, as to surprise. To the reception of this evidence was also interposed an exception.

It was competent for this limited purpose, and pertinent to the inquiry contained in the fourth issue. Upon cross-examination, she stated that she knew that the deed conveyed her title to the land to the defendant, which had been sold to him two years before, and during that time she had not called or sent to him for purchase money. John frequently bought groceries for her, but she always furnished him the money— the money she principally derived from rents, which he would collect for her, and she would hand him back money to buy groceries for her; that he had collected for her, for many years, rents on this and other property as her agent.

J. B. Smith, the Justice, was present when she signed the deed ; he witnessed it, and took it off with him.

, On re-examination, plaintiff said she had received no part of purchase money from either defendant or Jenkins, and she had never assented to, authorized or ratified, any payment to Jenkins.

W. W. Graham, witness for plaintiff, testified that he lived in Richmond County, and was the brother-in-law of Mrs. Shaw, the plaintiff, having married her sister Jane. That he and his wife consented to the sale of the property to Mr. Williams in 1881, at the price of $900.

That in September, 1883, he and his wife signed the deed in Richmond County, and he came to Fayetteville and delivered it to Mr. Williams, who seemed satisfied, and asked John Jenkins, who was with me, if he should pay me. John said yes. And he paid me $300 and interest, making $341 and some cents, being one third of $1,024, the consideration expressed in the deed.

On a subsequent visit to Fayetteville, Mrs. Shaw mentioned to me that she had never received her money, and to ask Mr. Williams for it.

I met him on the street and told him what Mrs. Shaw had said. He replied that he had paid Jenkins. I told him that would not do, that Mrs. Shaw wanted her money and had requested me to ask him for it. He said he had paid it once, and would not pay it again, and walked off.

*Defendant's Evidence.*—J. B. Smith, witness for defendant, testified: I was present as a witness when Mrs. Shaw signed the deed. There was no influence used to get her to sign, and there was nothing said about money in my hearing.

*Cross-examined by Plaintiff's Counsel.*—I am a Justice of the Peace, and went out to the house of John McL. Jenkins, at the request of A. B. Williams, to witness the signatures and to take the private examination of Mrs. Jenkins, which I did. John sent off after his sister, Mrs. Shaw. She came before I left, and signed the deed. I witnessed it and carried it to Mr. Williams.

A. B. Williams, defendant, testified: John McL. Jenkins sold the property to me in 1881 at the price of $900.

I paid W. W. Graham $300 and interest when he handed to me the deed executed by himself and wife in September, 1883. I paid Jenkins the balance of the purchase money. During two years plaintiff did not call for the purchase money, and she never called for it. I first heard through her counsel, shortly before this suit, that she claimed the money had not been paid.

Defendant's counsel proposed to prove by this witness, by acts and declarations of Jenkins, that for a series of years Jenkins was receiving for Mrs. Shaw rents of this and other property, as tending to show a general agency. Evidence excluded, on objection by plaintiff, as the agency must be proved *aliunde.*

Defendant excepted.

*Cross-examined by Plaintiff's Counsel.*—Jenkins was indebted to me for money advanced and goods sold along during the two years—but mostly for money. In this way the

purchase money was all paid before Mrs. Shaw signed the deed. I have never paid Mrs. Shaw anything personally. She was never indebted to me for goods, and I made her no advances in money.

John Jenkins is now insolvent; he was at that time; it was not generally known, but I had reason to apprehend it.

· No demand was made upon me for the money until after Jenkins became insolvent and left.

I had no acquaintance with Mrs. Shaw. She never told me that Jenkins was her agent to sell this property, and she never told me he was not. I had no communication with her at all.

I took possession in 1881, and soon bargained off a portion of the property for $800, retaining a small portion which adjoined my home place.

William T. Taylor, witness for defendant, testified: In 1874 or 1875, I bought a piece of land from Jenkins, acting for Mrs. Shaw, and paid the money to Jenkins. She signed the deed, and made no claim on me for the money.

There were no special instructions in writing asked for by the defendant's counsel.

Among other things, the Court charged the jury, that an agency to sell land did not necessarily imply the right to receive the purchase money; but that, whether or not Jenkins was the plaintiff's agent to receive the purchase money, was a question of fact, for the jury to find from all the evidence in the case, and in doing that, the jury could consider whether or not plaintiff had held Jenkins out as her general agent or not; that the deed (by defendant's witness) had been carried to defendant by the Justice of the Peace, &c., and all the surrounding circumstances of this transaction. That if plaintiff had made Jenkins her agent to receive the purchase money or held him out so defendant reasonably acted on that belief, and she had not received the money, it was her misfortune to have chosen a dishonest agent. But if de-

fendant trusted to Jenkins, as representing himself as her agent, if it turned out to be untrue, then defendant was the victim of his own credulity.

Defendant excepted.

Upon the 3d issue, the Court charged the jury, that if plaintiff received from Jenkins the purchase money, or any part of it, or, if knowing he had received it, she assented to or made no dissent, so defendant could get it back from Jenkins, that would be ratifying the payment to Jenkins.

Upon the verdict of the jury, the defendant asked the Court for judgment in his favor, as the jury had found against the plaintiff upon the 4th issue, as to ignorance and surprise. This was refused by the Court. Defendant excepted.

The defendant then moved for a new trial upon the other issues, for error in the charge and exceptions to the evidence, which being refused, and judgment rendered for the plaintiff on the verdict, the defendant appealed.

If the testimony of the plaintiff be accepted by the jury as a correct statement of what transpired when the agency in respect to the sale was created, and this, it belongs to them to determine, the authority to collect the money for the plaintiff was expressly withheld, and Jenkins was only empowered to make the contract. The extent of his authority seems not to have been inquired into, nor its limits communicated to the defendant at the time of making the contract, or afterwards, and when the deed had been executed. It is further manifest, that in giving her signature and seal to the instrument, to give it efficacy, as a conveyance, the plaintiff asserted her right to be paid for what she was conveying, and expressed her intention to call on the defendant and get her money. Unless, therefore, she had before permitted her brother to assume and exercise the functions of a general agent in conducting her business, and thus held him out as invested with such general authority to act for her, so as to reasona-

bly induce the defendant to believe in his possessing the right to take her money, and he did act upon that belief, she could not repudiate his authority and fall back upon limitations of which the defendant had no knowledge and compel the payment a second time.

In this aspect the case was presented to the jury, and it was as favorable to the defence as the appellant could rightfully demand. This brings up the consideration of the release relied on.

A series of decisions in this Court has established the proposition, that a recovery cannot be had at law in an action for the recovery of the purchase money, though never paid in fact, when such payment is acknowledged in the deed, and the claim therefor released, nor will evidence be heard to contradict the recital. *Brocket* v. *Foscue,* 1 Hawks, 64; *Graves* v. *Carter,* 2 Hawks, 576; *Spiers* v. *Clay's Administrators,* 4 Hawks, 22; *Lowe* v. *Weatherly,* 4 D. & B., 212; *Mendenhall* v. *Parish,* 8 Jones, 105. While such is the effect given to the recital in this State, in which the ruling in the English Courts is followed, it is generally held in our sister States, that the recital does not constitute an estoppel, and is but *prima facie* evidence, open to disproof, of the fact stated. The authorities will be found in the note to § 26 of the 1st volume of Greenleaf's Work on Evidence.

But in a Court of Equity the obstacle is removed, when the recital results from an inadvertence, and was inserted under a mistake of its legal effect, and without any intention of the parties that it should so operate as to preclude a recovery of the purchase money.

In *Crawley* v. *Timberlake,* 1 Ired. Eq , 346, a bill was filed to get rid of the release, upon an allegation, that it was ignorantly inserted in the deed, and its execution obtained by surprise, inasmuch as it was not founded on the consideration imported in it, namely, the payment of the purchase money, nor any other valuable or meritorious consideration,

and there does not appear to have been any *intention in the plaintiff to abandon or extinguish his demand,* thus obviously just.

In delivering the opinion upon the effect of simply setting up to an impeached release, the release itself, without meeting the assailing averment, or showing an actual consideration, Chief Justice RUFFIN uses this significant language: " A Court of Equity does not sustain these short-hand bars, such as a release, a stated account, and the like, unless they be pleaded as not only existing instruments, but also as being *fair and true,* and proper to be equitably enforced." In the further discussion, he quotes, with approval, the words of Lord Redesdale, to the effect, " that the plea of release must set out the consideration upon which it was made, if impeached on that point."

And so every release must be founded on some consideration, otherwise fraud must be presumed. 2 Dan. Ch. Prac., 766; Story Eq. Plead., §§ 766 and 797.

The jury find—and there is no complaint of the absence of sufficient evidence to warrant the finding—that the agent had no authority to receive the plaintiff's money, never did pay it to her, and that as his act was never ratified, the payment by defendant is not a satisfaction of her claim, and he is still exposed to her demand. It is not our province to examine the evidence and pass upon its effect, but if we were at liberty to do so, we could not say there was none to show a mutual understanding, that the purpose of the execution of the deed was only to pass the title, and not to acquit of the liability for the unpaid purchase money, while no specific issue was framed to raise the question.

The defendant insists, however, that the finding that the plaintiff's signature was not affixed to the deed procured by the defendant, by ignorance and surprise, leaves the release in full force, and is a bar to the claim.

The issue is not put in a form to have this effect. There

is no pretence that the plaintiff was surprised into making the deed, or was ignorant of what she was doing. It is manifest that she executed it with full knowledge that it passed her estate in the land, and such was her purpose. The true inquiry should have been, whether it was the intent to exonerate the purchaser from his obligation to pay the consideration money by the introduction of this recital, and if this was not the understanding, though erroneous, of both; in other words, a common mistake in both. The finding falls short of this, and, therefore, does not obstruct the rendering of judgment upon the verdict.

The difficulty we meet is, as to the disposition of the appeal, and whether the cause should, or should not, be remanded for the trial of an issue upon this point. But as no actual replication is necessary under our present system, and the matter set up in the answer is deemed controverted, unless it be a counter-claim, we consider the sufficiency of the release as open to proof as to its binding force, and as the defendant was content with the issue as drawn up and passed on, and the finding upon it is insufficient to reinforce the defence as constituting a bar to the demand, we conclude to affirm the judgment, based upon so much of the verdict as declares the debt unpaid.

There is no error, and the judgment is affirmed.

No error.                                                        Affirmed.