.ANDERSON & ROWLEY, Appellees, v. SARAH ALICE HOWARD, Executrix, Appellant.

**BROKERS:** Commission—When Earned—Disregard of Authority—
1 **Unwarranted Assumption of Implied Authority.** A broker employed to negotiate a sale of lands must obey instructions—must act *strictly* within the authority given. Any unratified, material departure therefrom, either in the way of assuming to bind his ..principal (a) by terms directly at war with his specific instruc-

tions, or (b) by independent provisions mistakenly assumed on his part to be implied, vitiates his entire work and deprives him of all compensation.

PRINCIPLE APPLIED: An owner of land, residing in Idaho, authorized his broker, in May, 1910, to sell his Iowa land "for the lump sum of $24,000 cash". Possession, impliedly, was to be given March 1, 1911. (The land was leased until said last named date.) The broker, within a week, assumed to sell on the following terms:

1. $100 down and $23,900 "when good warranty deed and abstract showing clear title, together with *lease* for current year, shall be delivered and *found to be correct* by vendee's attorney".

2. Vendee to deliver his deed to and collect his money at a named bank in Iowa.

The owner repudiated the broker's sale. *Held,* no commission was earned, because the terms (1 and 2) showed both a direct disregard of the authority given and an assumption of authority not implied by law.

**BROKERS:** .Commission—When Earned—Discharge of Broker—Sale 2 by Owner. One who has given his broker exclusive authority, for a named time, to effect a sale of his land on specified terms, except with a proviso that he (the owner) might himself sell, may, on receiving an offer from the broker not in accordance with the terms of the granted authority, repudiate the agency of the broker and close a pending sale effected by himself, without liability to the broker.

PRINCIPLE APPLIED: An owner of land, residing in Idaho, gave his broker the exclusive right, for 60 days, to effect a sale of his Iowa land, reserving the right, however, to sell through his own efforts. The authority to sell was "for the lump sum of $24,000 cash". Possession, impliedly, was to be given March 1st (nine months hence). The agent knew the "lump sum" proviso was to avoid "cutting down on even money", as the so-called 160-acre tract was known to be some two acres short. Within a week, the broker wired an offer of "$150 per acre, all cash, possession now". The owner wired his refusal on the same day, and stated that "he thought he had closed a sale of his own". The next day, and possibly (?) before this last telegram was received by the broker, he (the broker) signed a contract of sale in the name of the owner and wired the owner: "Have contract signed and deposit of $24,000. Letter follows." The letter would reach the owner in some three days. The owner did not wait for the letter, but repudiated the contract and closed his own sale. *Held,* the broker was not entitled to a commission.

**BROKERS:** Authority—Closing Sale at Point Other than Owner's 3, 5 **Residence.** A naked authority to effect a sale of land implies no authority whatever to contract for the passing of conveyances and the payment of the purchase price at a point other than the residence of the owner, even though such owner resides in a distant state.

**BROKERS:** Authority—Agreement to Furnish Abstract. A naked 4 authority to effect a sale of land carries no implied authority in the broker to bind the owner to furnish an abstract of title— let alone an abstract showing such clear title as vendee's attorney may find to be correct.

**BROKERS:** Authority—Closing Sale at Point Other than Owner's 3, 5 **Residence.**

**BROKERS:** Authority—Assignment of Outstanding Lease. A naked 6 authority to effect a sale of land carries no implied authority in the broker to bind the owner to assign to vendee an outstanding lease.

**BROKERS:** Authority—"Cash" Sale. A sale for $24,000, payable 7 "$100 on the execution of the contract of sale and $23,900 when good warranty deed and abstract showing clear title shall be delivered and found to be correct by vendee's attorney", is not a *cash* sale.

**BROKERS:** Authority—Naked Authority to Sell—Provision for 8 **Warranty Deed.** Whether naked authority to negotiate a sale carries implied authority to bind the owner to furnish a *warranty* deed, *quaere.*

**BROKERS:** Authority—Revocation—Acts Constituting Revocation. 9 A broker, authorized to negotiate a sale of lands, with reserve power in the owner to effect a sale himself, is *ipso facto* shorn of all authority to further act when the owner, on being apprised of an unauthorized sale, (a) promptly repudiated the same and (b) notified the broker that he himself was negotiating a sale.

*Appeal from Marshall District Court.—*C. B. BRADSHAW, Judge.

THURSDAY, DECEMBER 16, 1915.

PLAINTIFFS bring this action at law to recover commissions alleged to have been earned by them in the sale of real estate

for M. C. Howard in his lifetime. Defendant denies the claim and denies that the contract of sale, for negotiating which plaintiffs demand a recovery, was ever authorized or approved by Howard. At the close of the plaintiffs' evidence, the court overruled the defendant's motion for verdict and judgment in her favor, and when both parties had rested, the court directed a verdict in favor of the plaintiffs. Defendant appeals. —*Reversed*.

*C. H. Van Law,* for appellant.

*Lundy, Wood* and *Baskerville,* for appellees.

WEAVER, J.—For reasons hereinafter stated, the ruling and judgment of the court below cannot be sustained.

At the time in question, plaintiffs were residing and doing business at Union, Iowa, and Howard was living at Nampa, in the state of Idaho. Howard had a farm which he desired to sell, in Marshall County, Iowa, where he had formerly resided, and he had some communication with plaintiffs on the subject. The entire transaction between them was by correspondence, which we here set out in full. It was opened by a letter from Howard, and continued in the following order:

1. BROKERS: commission when earned: disregard of authority: unwarranted assumption of implied authority.

"Nampa, Idaho, May 3, 1910.

"Mr. C. S. Anderson,

"Dear Sir: I see by the Star you have gone into the real estate business, well how do you like it. I wish you success, what commission do you have; been thinking of selling my place there as I am getting too lazy to farm any more and I like the west O. K., think of going into the sheep business in the hills, if I can get $150.00 per acre net or a small commission believe I will let her go. We are having fine weather since the first of March, have prospects for a bumper crop.

Land is advancing all the time and things look good. Bull-frogs are doing a great job of singing in the ditches. All are well, hoping to hear from you.

"Yours respectfully.

"M. C. Howard."

"Union, Iowa, May 9, 1910.
"Mr. M. C. Howard, Nampa, Idaho,

"Dear Sir: Your letter of May 3d received Saturday. We are glad to know things are looking so favorable in Idaho, but sorry to think there is less prospect of your returning to Iowa in the near future.

"It is very dry here at present and we are very badly in need of rain, which will probably not come until it becomes warm enough to give us thunder showers. Farmers have had an ideal opportunity to get their spring work done, as there has hardly been a day since March 1 but has been fit to work in the fields.

"We shall be glad to have your place to sell and will go to work on it at once. Some rain would brighten our prospects. We have had a nice business this spring, having sold 1,200 acres so far, beside a number of city properties and mercantile outfits.

"We shall hope to accomplish something for you within a few weeks. We would like to have the exclusive sale for a time, because we then can afford to work other territories like Marshalltown, Grinnel and Oskaloosa for our buyers, while if the farm is placed with a number of real estate dealers, we might possibly go to a good deal of expense and another man reap the reward. If, however, for a time we have the sole sale, we shall not be afraid to venture.

"Regarding the matter of commission, we will be reasonable and charge you but one per cent. You have said nothing about terms, but suppose you want the money to use. We understand the place is clear and title perfect? Please advise

if this is O. K. and we will go to work at once on the proposition.

"Yours very truly,<br>"Anderson & Rowley.

"We shall arrange to get Charley Lawrence to work with us on this farm and try to secure a sale early."

"Nampa, Idaho, May 16, 1910.

"Anderson & Rowley,

"Dear Sirs: Yours of the ninth received; . . . Yes, my land in Iowa is all clear, have a first class abstract, would like it all cash, as I can get from 8 to 12 per cent. here and as one can get money 6 on real estate there I can't afford to leave it for that, only for that I would leave part on the place. Your commission is right and will give you the sale for the place for sixty days without I should make sale myself, then you will get no commission, the place is rented till the first of March, 1911.

"Hoping you will be able to make sale soon I remain,

"Respectfully,<br>"M. C. Howard."

"Nampa, Idaho, May 19, 1910.

"Anderson & Rowley,

"Dear Sir: I think I forgot to state in my last letter that my place is a little short of 160 acres, 158 more or less being on the county line, so put it at even money $24,000.00, then there will be no cutting done on even money.

"Yours respectfully,<br>"M. C. Howard."

On May 24, 1910, plaintiffs, working with Lawrence, secured from one Hathaway an offer of $150 per acre for the farm, payable in installments, and telegraphed Howard as follows:

"Union, Iowa, May 24, 1910.

"M. C. Howard, Nampa, Idaho,

"Working with Anderson & Rowley secured following offer: one hundred fifty per acre, possession at once, cash eleven thousand seven hundred mortgage back for balance, ten years five per cent, optional payments, no better prospects answer at once. "C. E. Lawrence."

One Gibbs, who had previously sought to purchase the land from Howard, appears to have heard of the pendency of these negotiations and, going to Lawrence, offered to buy at $150 per acre, all cash. Whereupon, plaintiffs sent Howard the following telegram:

"Union, Iowa, May 25, 1910.

"M. C. Howard, Nampa, Idaho,

"Cancel our offer of 24th. Elza Gibbs authorizes us to offer one hundred fifty per acre all cash, possession now, wire answer. "Anderson & Rowley."

On same day, Howard replied to this telegram as follows:

"Nampa, Idaho, May 25, 1910.

"C. E. Lawrence, Union, Iowa,

"Think I have sold for twenty-four thousand cash without possession till spring. Can't consider your offer.

"M. C. Howard."

It will be observed that, up to this time, no offer had been made or reported to Howard within the terms upon which plaintiffs were authorized to sell. The authority to sell was for cash, and the first offer submitted was for a sale on installments. The authority to sell was for the lump sum of $24,000 cash, and the second offer was "for $150 per acre possession now"; although the previous correspondence notified plaintiffs that the land was rented until March of the following year.

On the following day, May 26, 1910, plaintiffs resumed negotiations with Gibbs and in Howard's name entered into a written contract with him. The contract so made purported to bind Howard to sell and convey the land to Gibbs for $24,000, payable, $100 on the execution of the instrument and $23,900, with interest at six per cent., when good warranty deed and abstract showing clear title, together with the lease for the current year, should be delivered and found to be correct by Gibbs' attorneys.

It is claimed on part of plaintiffs that this contract was made before Howard's telegram of May 25th was received, though it had been sent the day before; but the fact that there had been ample time for the transmission and delivery of the telegram, and the otherwise unexplained sudden change from the terms offered by Gibbs and reported to Howard on the day before, and without waiting, as they claim, for Howard's answer, are, to say the least, sufficient to justify serious doubts whether Howard's refusal of the offer of May 25th and his notification that he, himself, was negotiating a sale had not been delivered and served to spur plaintiffs to the activity manifested.

The contract having been signed and Gibbs' check for $100 received, plaintiffs telegraphed Howard:

"Union, Iowa, May 26, 1910.
"M. C. Howard, Nampa, Idaho,
"Have contract signed and deposit twenty-four thousand, Elza Gibbs.   Letter follows.
"Anderson & Rowley."

The letter referred to in the telegram was as follows:

"Union, Iowa, May 26, 1910.
"Mr. M. C. Howard, Nampa, Idaho,
"Friend Howard:  Referring to our two telegrams, our first offer was from a man in Grundy County.  Then Elza Gibbs offered $150.00 per acre and we wired you again, then

when Gibbs heard of the Grundy County man, he came back and offered us $24,000.00 spot cash when deed and abstract were received.

"As your agents, authorized by your letters of May 16th and 19th, we closed a sale with him binding him by contract and took a deposit to secure the carrying out of the same.

"Please send deed, made out to Elza Gibbs, with abstract and assignment of lease to Citizen's Bank and they will collect the $24,000.00 for you and deliver deed and lease.

"We are pleased to be able to close this, all cash, for you so soon. It is a splendid farm and there are not many others in this vicinity that we could do this with so quickly.

"Yours truly,

"Anderson & Rowley."

At once, upon receipt of this telegram and before the arrival of plaintiff's letter, Howard wired an answer, calling attention to the fact that he had reserved the right to sell the land himself, and denying plaintiffs' agency in the matter. Thereafter, plaintiffs instituted this action, basing their claim of agency upon the correspondence between the parties and their alleged right to commissions upon the written contract negotiated by them with Gibbs.

That plaintiffs were at one time the agents of Howard for the purposes quite clearly stated in the correspondence is to be admitted; and, if the contract of sale made by them was within the scope of the agency so created, and made before that agency was revoked, they were undoubtedly entitled to recover. We think, however, that it is perfectly clear that the case made by them on the trial fails to sustain their claim in this respect. The authority given them was to sell for cash at the lump sum of $24,000, and not at any price per acre. The land was then in possession of a tenant, and possession could not be given for nearly a year in the future, and of this the agents were notified. The agents, as was, of course,

2. BROKERS: commission: when earned: discharge of broker: sale by owner.

entirely proper, reported first the offer of one customer to buy at a price per acre payable in installments, but there is no pretense that Howard was under any obligation to accept it. This was soon withdrawn, and another offer by another purchaser forwarded by telegraph, to buy the land ''at $150 per acre cash, possession now.'' This, too, was manifestly not authorized. At once, and by wire, Howard refused the offer and informed plaintiffs that he was himself making a sale of the land. ·Plaintiffs had asked him to wire his answer, which he did promptly; and he had a right to assume that they would wait a reasonable time to receive it before taking further steps in the matter. After thus sending them· a refusal of the offer and notifying them that he was exercising his reserved right to sell the land himself, but possibly before receipt of his telegram by plaintiffs, they telegraphed again, saying, ''Have contract signed and deposit $24,000. Elza Gibbs. Letter follows.'' Of the contents of this letter, Howard could have no information for the period of at least two or three days, required for its transmission through the mails. Comparing this telegram to him with the one preceding it, he could reach no other conclusion than that a contract had been made by plaintiffs on the terms of the prior dispatch, ''$150 per acre, possession now''; and, without waiting for the letter, he at once repudiated it and proceeded to close the sale which he himself had made. When the letter did arrive, it contained no copy of the contract, nor did it inform ·him of a single provision which the contract contained, except that it provided·for a sale of the land for ''$24,000 spot cash when deed and abstract were received''.

Now there is no better settled rule in the law of this state than that an agency to sell land (without other qualifying provision) confers no authority to sell except for cash. Nor

3. BROKERS: authority: closing sale at point other than owner's residence.

can such agent bind his principal by a contract requiring him to carry out or perform its terms elsewhere than at his own home or place of business, even though it may be in a

distant state. And although the contract be clearly within the agent's authority as to price and time of payment, yet if the agent assumes authority to insist on provisions not contemplated by the agreement of agency—as, for example, that the seller shall send his deed to a certain bank for delivery, or that the purchase money shall be paid at some named bank or office in the vicinity of the land or the place where the contract is made or elsewhere than at the seller's place of residence or business, or that payment be conditioned upon the seller's delivery of an abstract of title which shall be found sufficient by some third person,—such added provision vitiates the entire contract, and, unless ratified or approved, the agent cannot recover commissions upon any sale so made or attempted. *Sawyer v. Brossart,* 67 Iowa 678; *Milligan v. Owen,* 123 Iowa 285; *Balkema v. Searle,* 116 Iowa 374; *Hunt v. Tuttle,* 133 Iowa 647; *Knox v. McMurray,* 159 Iowa 171; *Staten v. Hammer,* 121 Iowa 499; *Wanless v. McCandless,* 38 Iowa 20.

The legal propositions advanced by appellee's counsel, that plaintiff may recover if his agency be proved and he is shown to have performed the service therein contemplated, and that a real estate agent's commission is earned when he provides a purchaser ready, willing and able to buy on the authorized terms, are indisputable; but the trouble with plaintiffs' case is that they not only fail to show an execution of their agency according to its terms, but the contract of sale procured by them, for which they demand commission, shows, upon its face, when compared with the correspondence between the parties, that plaintiffs exceeded their authority as agents or brokers, and Howard was under no obligation to approve or ratify it. For example, passing the doubtful question whether plaintiffs had any authority to enter into a written contract in Howard's name (see *Holmes v. Redhead,* 104 Iowa 399; *Balkema v. Searle,* 116 Iowa 374; *Keim v. O'Reilly,*

4. BROKERS: authority: agreement to furnish abstract.

54 N. J. Eq. 418; *Brandrup v. Britten* (N. D.), 92 N. W. 453; also cases compiled in 8 Am. & Eng. An. Cases 851), the exceeding of authority is manifest in the provision which purports to require Howard to furnish an abstract of title which shall be approved by the purchaser's attorney, before the purchase money is paid. That an agency to sell land carries with it no implied authority to bind the owner to furnish an abstract of title has been decided so often by this court that the question is not open to argument. It is possible, in the case at bar, that Howard's statement in one of his letters that he "has a first class abstract" might, with some effort, be construed into an expression of his willingness to furnish it to a purchaser; but by no allowable stretch of the power of judicial construction can it be construed into a grant of authority to plaintiffs to bind him to furnish an abstract which shall have the approval of the purchaser's attorney. See *Hunt v. Tuttle,* 133 Iowa 647.

Again, it is well settled that an agency to sell lands implies no authority in the agent to agree for his principal that the deed shall be delivered or that the purchase money may be paid elsewhere than at the seller's place of residence or business; yet in this case, Howard was called upon by the plaintiffs to send his deed to a bank in a distant state, to be delivered on payment of the purchase money to the bank, thus requiring him to assume the expense and all risk of loss in its transmission. This very materially exceeded the agent's authority. The same may be said of the requirement that plaintiff assign the lease which was outstanding and unexpired. No demand is pleaded or proved to have been made upon Howard at Nampa, Idaho, for the delivery of the deed, nor is it claimed or shown that payment of the purchase money was ever offered or tendered to him there or elsewhere.

5. BROKERS: authority: closing sale at point other than owner's residence.

6. BROKERS: authority: assignment of outstanding lease.

Still again, it is conceded that plaintiffs had no authority

to sell except for cash, and, unless we are to overturn the authority of our precedents, a sale for $100 cash in hand and

7. BROKERS: authority: "cash" sale.

withholding payment of the remainder until deed and satisfactory abstract should be delivered is not a cash sale. The case of *Gilbert v. Baxter*, 71 Iowa 327, which is very similar in all essential respects to the instant case, is directly in point. There, the authority to the agent was to sell for cash, and he entered into a contract with a purchaser to sell upon payment of $500, cash in hand, the remainder to be paid on delivery of a good and sufficient deed and abstract of title showing perfect title in the grantor. Concerning the situation thus presented, we there held that, even if it should be conceded that, by usage or custom, the seller is required to furnish an abstract of title "yet it does not follow that the agent, whose authority was to sell for cash, had authority to bind his principal by an agreement containing a provision for payment when an abstract should be furnished showing perfect title in him. The contract was not for the absolute sale of the property; for it is at least doubtful whether the buyer could be compelled to consummate the purchase, if, upon an inspection of the abstract, it should appear that the title to any of the property was defective. Neither was it a sale for cash; for, by the terms of the contract, the payment was dependent on the furnishing of an abstract showing 'perfect title in the grantor'." This quotation applies with great aptness to the admitted facts in this case.

It follows, we think, that the district court erred not only in directing a verdict in favor of the plaintiffs, but also in overruling the motion for a directed verdict in favor of the appellant. There is no dispute whatever as to any of the essential facts, and the issue presented is clearly one of law.

There are still other questions suggested by the record,— for example, whether the requirement in the written contract that Howard should make conveyance by warranty deed was

not in excess of the agent's authority (see *Garcelon v. Tibbetts,*

84 Me., 148, and cases there cited); but, in

8. BROKERS: authority: naked authority to sell: provision for warranty deed.

view of our conclusions already announced, it is unnecessary to pass upon them. None of the points to which we have adverted is to be avoided by saying that defendant did not raise these specific objections. That there are occasions where an excess of authority by an agent will be decreed

9. BROKERS: authority: revocation: acts constituting revocation.

waived by the principal's failure to object will be conceded, but this case does not fall within that rule; for it will be seen by the correspondence that, in responding to plaintiff's telegram of May 25, 1910, reporting Gibbs' offer of ''$150 per acre, possession now'', Howard at once replied, refusing to approve such a sale, as he had the undoubted right to do, and, in the same communication, advised them that he was himself negotiating a sale. This, as a matter of law, terminated the plaintiff's agency, and Howard was thereafter under no obligation to assign any other reason for refusing to recognize their contracts made in his name. Moreover, at the time when he sent the final telegram on May 26th, denying their agency in the sale which had been made, he had no knowledge that plaintiffs had undertaken to bind him by the extraordinary contract provisions to which we have referred. In this respect, the case is again in line with the decision in *Gilbert v. Baxter, supra,* where it is said that the owners of the land, in proceeding upon the theory that they had not employed the agent to bind them by such contract, did not waive the right to make the objection that he had exceeded his powers when that fact came to their knowledge. It was enough, in our judgment, that Howard did object to the attempt of the plaintiffs to bind him by the contract of sale they had made, and did deny their authority in the premises.

For reasons stated, the judgment below is reversed and cause remanded for further proceedings in harmony with this opinion.—*Reversed.*

DEEMER, C. J., LADD, GAYNOR, PRESTON, and SALINGER, JJ., concur.