FRANK L. DODD, Appellee, v. BERNHARD GROOS, Appellant.

**CONTRACTS:** Proposals and Acceptance—Definiteness of Proposal
1 —Options—Vendor and Purchaser. A *definite* proposition requires an acceptance only to complete a contract.

PRINCIPLE APPLIED: One negotiating for the purchase of land proposed, as one of the terms of purchase, to give "a first mortgage of $6,000 at 5% for 5 or 10 years optional; that is, pay on any interest pay day $1,000 or more." The owner responded by saying he would accept if $100 more was added to the total price. The proposed purchaser validly accepted the last proposition. *Held*, an acceptance only was necessary to constitute a valid contract under which the *purchaser* had the option to give a mortgage for either 5 *or* 10 years.

**VENDOR AND PURCHASER:** Contracts—Construction—Options.
2 In case an option exists to do either of two things, he who is under obligation to first act in reference thereto has the election.

PRINCIPLE APPLIED: (See No. 1.)

**BROKERS:** Authority—Authority to Make Contract—When In-
3 ferred. Authority in a real estate broker to attach the name of the principal to an actual contract of sale is a power additional

to and is not to be inferred from authority "to find a purchaser" or "to negotiate the terms of sale"—is a power not to be inferred in the absence of unequivocal expressions to that effect. Correspondence reviewed, and held not to arm the broker with power to enter into a written contract.

BROKERS: Authority—Place of Payment—Furnishing Abstract.
4 Authority to actually enter into a contract for the sale of land implies no authority whatever to insert in such contract provisions binding the principal (a) to receive interest on deferred payments at a place not consented to by the principal, or (b) to furnish a merchantable abstract.

PRINCIPAL AND AGENT: Unauthorized Act of Agent—Waiver
5 of Unauthorized Provisions—Promptness Required. It is possible that the *unauthorized* parts of a written contract made by an agent in the name of his principal may be waived and relinquished by the other party to the contract and the remaining part enforced, but such waiver and relinquishment *must be promptly made.*

PRINCIPLE APPLIED: A broker entered into a written contract, in the name of his principal, for the sale of the principal's land. Assuming that the broker had authority to sign the principal's name to a contract, yet it appeared that two wholly unauthorized provisions were inserted in the said contract, to wit: (1) that interest payments should be made at a certain place, and (2) that the principal should furnish a merchantable abstract of title. Long after the action for specific performance was commenced, and more than seven months after the contract called for performance, the buyer, for the first time, sought to waive and relinquish all rights under said two provisions. *Held*, too late—that he must then stand or fall on the writing as a whole.

ESTOPPEL: Equitable Estoppel—Failure to Act on Conduct—Ven-
6 dor and Purchaser. An estoppel *in pais* arises only when conduct of one party has been acted on by another to the prejudice of such other. So held where the owner of land, in refusing to convey the same in accordance with an alleged contract with his agent, assigned as cause *that his wife was unwilling to sell*, and, before the alleged purchaser had in any manner acted on such reason to his prejudice, further wrote, and assigned as reason for his refusal *that the alleged contract with the agent was wholly unauthorized.*

BROKERS: Authority—Receipt of Purchase Price. Authority of
7 a real estate broker to receive any part of the purchase price of land sold arises only in case the broker has authority *to actually convey.* One employed simply to find a purchaser has no such

authority. Therefore, held that when one claiming to have pur-
chased land paid part of the purchase price to a party who was
the owner's agent ''to find a purchaser'' only, he, in legal effect,
constituted such person *his own agent* to convey it to the owner.

**PLEADING:** Matters Specially Pleaded—Principal and Agent—Rat-
ification. Ratification by a principal of the unauthorized act of
his agent need not be specially pleaded—may be shown under
a general allegation that the act in question was the act of the
principal.

*Appeal from Humboldt District Court.—*D. F. COYLE, Judge.

FRIDAY, MARCH 17, 1916.

ACTION for specific performance of an alleged contract
for the sale of land resulted in decree as prayed. The defend-
ant appeals.—*Reversed.*

*Healy & Thomas,* for appellee.

*Maurice O'Connor,* for appellant.

LADD, J.—I. The defendant Groos, residing at San
Antonio, Tex., owned 80 acres of land near Pioneer. The
plaintiff claims to have purchased said land through defend-
ant's agent, J. F. Whittman. In his petition, filed February
20, 1914, he prayed for the specific performance of a written
contract, to which Whittman had attached Groos' name by
himself as agent. This contract, among other things, exacted
the payment of $6,000 of the purchase price, 10 years after
March 1, 1914, with interest payable at Gilmore Exchange
Bank, Gilmore City, Iowa, and that plaintiff ''furnish an
abstract showing good merchantable title on last mentioned
date.'' After the hearing had commenced, and on October 10,
1914, plaintiff filed an amended and substituted petition,
alleging that he purchased of defendant the 80 acres for
$9,600 by written contract executed by Whittman in pur-
suance of authority given him in the correspondence herein-
after set out; that a binding agreement was entered into

through the correspondence and oral acceptance of defendant's proposition; and plaintiff paid Whittman $500 down, according to the terms of the agreement, $420 of which was sent to Groos, and $80 of which was retained by Whittman, as commission; that thereupon such agreement was reduced to writing, but some conditions of a printed form were included by oversight, inconsistent with the above arrangement; that "both plaintiff and defendant were mistaken as to both the fact and as to the legal effect of said printed stipulations; and that, if necessary, in order to enforce the actual contract entered into for the purchase and sale of said real estate, said written contract should be reformed by striking therefrom all stipulations and terms which are prejudicial to the rights and interests of the defendant herein, and which are not included in said correspondence.'' It was further alleged that thereafter defendant repudiated the transaction; that plaintiff is ready, able and willing to perform, but, though requested so to do, defendant had refused. The prayer is for a decree that the written contract be reformed so as to conform to the agreement through correspondence, and as so reformed, be enforced. The answer and reply were such as to present the following issues: (1) Was the proposition made by plaintiff through Whittman one which exacted only an acceptance to complete a contract? (2) Was the agent, Whittman, authorized to enter into the written contract for defendant with purchaser? (3) If so, can plaintiff, by waiving conditions of the written contract, other than those embodied in the correspondence, insist on the specific performance of the latter, and (4) did defendant, by asserting that his wife would not consent to the sale, waive all other grounds and thereby estop himself from pleading other grounds in defense? Another issue is involved, though not specially pleaded: (5) Whether defendant, in mailing the check and drafts back to Whittman instead of Dodd, ratified the written contract.

II. The decision of these issues necessarily depends on the evidence adduced. On July 23, 1913, J. F. Whittman

wrote Groos that a man from the east had offered $100 per acre for his land, and that he thought "we can coax him to about one hundred five," and requested to be informed if his land was for sale soon, as the man would go back, and stated that his commission would be $1.00 per acre. Groos responded that he did not know the value of the land, but would sell it, and asked Whittman to make him an offer. Whittman responded by saying that the improvements were poor; that the land was not tiled and might be assessed for ditch to be excavated north of it; that he might coax the customer to $110, and asked for price and terms, again named his commission, and promised to do all he could for him, and enclosed a circular with prices on several farms. Groos acknowledged receipt of this, stated that the land was part tiled; that he could not take less than $120 per acre; that he was willing to pay the commission and, though he preferred cash, would take a mortgage at 5%, adding, "The terms depend sometimes a great deal on the buyer." In response to this, Whittman wrote, on August 13, 1913:

"I have an offer on it $9,500. The party will give $500 now to bind contract, and $3,000, March 1, 1914, and a first mortgage of $6,000 at 5% for 5 or 10 years optional. That is, pay on any interest pay day $1,000 or more. Now then, if you want to sell on these terms, let me know at once, as this party is going to buy soon."

He advised that the deal was a good one, and requested that if he would not do this, he state his best terms, and added that "Mr. Dodd of Humboldt is the party who wants to buy." Groos answered, August 16th, saying:

"The terms as offered are not the most suitable, but I will agree to accept the terms as suggested in your letter, providing the party will pay $9,600 for the place, or $120 per acre."

Whittman exhibited this letter to Dodd, who said to him, "I will take the farm today;" and handed him $50 in currency, with the understanding that, as soon as Whittman got

the contract for him, he would tender the balance. Thereupon, Whittman wrote, on August 19th:

"Your letter of August 16th recd., and I 'phoned my man at once. He will take the place at $9,600, $120 per acre, terms as per my letter of August 13th. Will send you check and contract as soon as we can have same drawn up. I will enclose herewith check $50, to bind contract for the man, as he asked me to do this. Contract will follow, also ck less my commission, which is $80, $1.00 per acre."

Whittman testified that he employed Van Alstine to draw a contract; that it was signed in duplicate on the same day, when Dodd handed him an additional $450 in currency. The contract bears date August 19, 1913, but was acknowledged by Whittman August 23d following, was mailed to Groos August 27th, and recorded September 2d. On August 27th, Whittman wrote:

"Enclosed find contract, also draft for three hundred and seventy and 00-100 ($370.00) for payment as per contract, $50.00 mailed you August 19th, and enclosed $370, and receipt for $80, my commission, which completes the $500 payment, as per contract."

Groos answered the previous letter, August 29th:

"Your letter of Aug. 19th, with enclosed check of $50.00 as payment on farm, came to hand. Will herewith enclose same check and return it to you, and will say that my wife will not consent to the selling of our place and never was in favor of it when I first offered it for $120.00 per acre, she feels that we ought to keep it as it is a safe investment and always brings in a nice income. I am also in receipt of a letter from a law firm and land agency of Humboldt, Iowa, saying that I had offered my place much to cheap. I acted hasty and without first consulting my wife when I first offered the place for sale, it may be that in the future or within a year or to that I can convince my wife that it will be best to sell."

On September 1st, Groos wrote, returning the draft for $370 and the contract:

"Your communication of Aug. 27th, 1913, with enclosed contract, draft of $370.00 and receipt of 80.00 came to hand last Saturday. You have no doubt received by this time my former letter with returned check of $50.00 and informing you that I desire to reject the entire matter pertaining to the selling of my land and also stated the reasons. The part of the contract which reads that a mortgage will be given on March 1st, 1914, in the sum of $6000.00, drawing interest at 5% per annum and maturing on March 1st, 1924, that part is objectionable; it is to long a time to accept a mortgage at such small interest for so many years, it should have been 6% for such a long time as ten years, and then $120.00 per acre would be selling the place about $10.00 per acre to cheap. It is not necessary for me to say more now in regard to this matter, as I stated my other reasons for not wanting to sell, in my former letter."

Whittman responded, September 3d:

"Enclosed find draft for $50.00 in place of check mailed you on August 19th, which you returned August 29. Now then, Mr. Groos, I sold your land according to your written instructions and sent you the payment down, less my $1.00 per acre. I made a written contract of sale and same is recorded. You cannot sell to anybody else. If you repudiate your contract, the buyer will at once begin suit for a deed, and if you fail to deed, the clerk of the court will make a deed. If your wife refuses to sign, one third of purchase price will be held by the clerk until she does."

Groos' final letter, of September 10, 1913, reads:

"Replying to your favor of September 3d, I herewith return draft unaccepted. I find that my place is worth more, and that I can secure more for it than the price you mentioned to me that it was worth. It occurs to me that you did not act fair toward me in representing same to be of the value you did; as you well knew or had means of knowing

that it was worth at least $8.00 or $10.00 per acre more. Further, I did not authorize you to make any contract with the buyer or to sign my name thereto; and I repudiate any such contract. The terms you made for me are not acceptable to me, as I would want at least one-half cash if I sold to anybody. From what I learn about land values from adjoining property owners to mine, you know that my property is worth considerably more; and I have had better offers since hearing from you. But I am not disposed to sell at this time.

"But, to show I am fair to you for your efforts, without admitting or adopting any act you have made, I am willing to give to you the sum of $80.00 for your services in trying to secure a purchaser for the land. The price you suggested is unfair and unreasonable; and if I sold the land, I would want what was fair and right."

At Dodd's instance, Whittman addressed Groos on February 3, 1914, as follows:

"Mr. Dodd ask me to write you in regard 'Abstract;' he would like that you send same to bank here that he can have same examined, as contract calls for settlement Mar. 1st, 1914. And Mr. Dodd ask me deliver the land he bought, so I guess it will be up to you to deliver the goods.

"Kindly let me hear from you."

III. It will be noticed as part of the terms proposed in Whittman's letter of August 13th that the deferred payment was to be "a first mortgage of $6,000 at 5% for 5 or 10 years optional." Groos responded by saying that the terms were satisfactory if he were paid an additional $100 for the land. Would an acceptance of this complete the contract, or were further negotiations as to the time of the maturity of the mortgage required to complete the contract? This necessarily depends on whether such time, 5 or 10 years after March 1, 1914, was optional with the purchaser or seller.

The matter involved something to be done by the pur-

1. CONTRACTS: proposal and acceptance: definiteness of proposal: options: vendor and purchaser.

chaser.  The agent was stating what he would do, and after having done so, he added, "Now if you want

**2. VENDOR AND PURCHASER: contract: construction: options.**

to sell on these terms let me know."  He then understood that he was stating definite terms, and the seller so treated the proposition; for he expressed his readiness to accept "the terms as suggested," provided the purchase price be increased $100.  The purchaser merely reserved to himself the right to elect whether the deferred payment to be secured by first mortgage should be made in 5 or 10 years from date.  The proposition was sufficiently definite so that acceptance acceded to such an election, and with such proposition, would constitute a contract.

IV.  The purchaser, Dodd, testified that the written contract was the only one he understood he had with plaintiff; and in both the original and the amended and substituted petition, the prayer is for the en-

**3. BROKERS: authority: authority to make contract: when inferred.**

forcement of that contract.  A question of vital importance, then, is whether Whittman was authorized to execute the written contract by signing Groos' name thereto.  If any authority there was, it must be inferred from the correspondence between them.  This necessarily depends on the intention of the owner in engaging the agent; whether the latter was actually to sell the land or merely find a purchaser therefor.  In the first two letters, Whittman pretended to have a customer (of whom he knew nothing at the trial) whom he might coax to pay $105 per acre (first letter) or $110 per acre (second letter), and he mentioned the commission he would require.  In answer to the last, Groos stated his lowest price and indicated that he would give time on part of it.  Whittman then wrote that Dodd had offered $9,500, and stated the terms of the offer.  Groos replied that, on the payment of $100 more, he would agree to accept.  Dodd said he would take the land and paid the earnest money exacted.  Nothing was said concerning a sale of the land by Whittman, and the

only inference to be drawn from the correspondence is that he was negotiating with a possible purchaser and would exact a commission if he found one on terms acceptable to Groos. Ordinarily, a real estate agent's only duty is to find a purchaser ready, able and willing to buy on the owner's terms or such as are acceptable to him; and he is not to be held to have authority to sell unless this is to be inferred from unequivocal expressions to that effect. Even where the words ''for sale'' or ''sell'' are used in connection with the employment of a real estate broker, the agency is not necessarily to be construed as that to sell; but the circumstances may be such that finding a purchaser to whom the principal may sell is intended. *Ford v. Easley,* 88 Iowa 603; *Bird v. Phillips,* 115 Iowa 703. A real estate agent may be given authority to execute a contract for his principal; but it is an additional power, not to be inferred from that to find a purchaser or to negotiate the terms of sale. *Holmes v. Redhead,* 104 Iowa 399; *Nelson v. Western Union Tel. Co.,* 162 Iowa 50; *Balkema v. Searle,* 116 Iowa 374; *Brandrup v. Britten,* 11 N. Dak. 376 (92 N. W. 453); *Larson v. O'Hara,* 98 Minn. 71 (8 Am. & Eng. Ann. Cas. 849 and cases in note).

The decisions are quite generally to the effect that a written contract for the sale of land which the agent has signed on the parol authority of his principal is not within the statute of frauds, and may be enforced. *Brandon v. Pritchett,* 126 Ga. 286 (7 Am. & Eng. Ann. Cas. 1093, and note in which cases are collected). For this reason, such authority is not to be implied unless necessary to enable the agent to perform the service he has been employed to render. For this reason, the weight of authority seems to deny the right of an agent employed to sell to enter into a written contract with the purchaser, on the ground that many matters which the owner must determine necessarily are involved in making such an agreement. *Halsey v. Monteiro,* 92 Va. 581 (24 S. E. 258); *Larson v. O'Hara, supra. Contra, Vanada's Heirs v. Hopkins' Admr.,* (Ky.) 19 Am. Dec. 92.

It is unnecessary to pass on this question now; for what was said in the letters cannot be tortured into the direction to the agent to enter into a contract of sale. He was the "go-between," negotiating between the parties to get them together on terms. He acted without authority in attaching Groos' name to the written contract. See *Weatherhead v. Ettinger,* (Ohio) 17 L. R. A. (N. S.) 210, and extended note. The decision in *Hopwood v. Corbin,* 63 Iowa 218, is not in conflict with this conclusion, for there the correspondence was construed to direct the agent to sell the land.

V. Some of the conditions in the contract were in excess of Whittman's authority, even if he had had the right to attach his principal's name thereto. He

4. BROKER: authority: place of payment: furnishing abstract.

could only insert conditions proposed and accepted, in any event. Nothing had been said of the place of paying the interest, or of furnishing the abstract. The contract stipulated that the interest should be paid at Gilmore City, and that Groos should furnish a merchantable abstract. These conditions were in excess of authority. *Knox v. McMurray,* 159 Iowa 171; *Hunt v. Tuttle,* 133 Iowa 647; *Anderson v. Howard,* 173 Iowa 4.

Whether they might have been waived if this had been done in apt time, as before performance was required, need

5. PRINCIPAL AND AGENT: unauthorized act of agent: waiver of unauthorized provisions: promptness required.

not be determined; for plaintiff demanded an abstract shortly before, and did not change his attitude until seven months after, March 1, 1914, when, according to both the contract and correspondence, the deal was to be consummated. The attempted waiver came too late.

VI. We do not understand appellant to rely on the allegation that defendant is estopped from setting up other

6. ESTOPPEL: equitable estoppel: failure to act on conduct: vendor and purchaser.

grounds for not performing the contract, by writing that he would not sell because of his wife's refusal to consent thereto. Plaintiff did not act in reliance thereon in any manner to his prejudice prior to the receipt of other

letters reciting other grounds of refusal, and among them that the written contract was without his authority. Therefore, plea is without support.

VII.    Groos returned to Whittman the check of $50, sent to him by Whittman, and also the draft of the same amount sent in its stead, and the draft of $370. Counsel for appellee contend that he should have returned them to plaintiff instead, and that in not doing so he is deemed to have retained them, and thereby to have ratified the written contract of sale. This is on the theory that Whittman was authorized to receive in behalf of defendant the first payment, and that, in returning the check and drafts to Whittman, he was sending them to his own agent, and in law must be held to retain them still.

7. BROKERS: authority: receipt of purchase price.

If this were true, such retention must have been deemed ratification of the contract; for, contrary to appellant's suggestion, ratification may be relied on without pleading it. The ratification of an unauthorized act of an agent relates back to its inception, and may be alleged as the act of the principal. *Long v. Osborn,* 91 Iowa 160; *Smith v. Des Moines Nat'l Bank,* 107 Iowa 620; *Lull v. Anamosa Nat'l Bank,* 110 Iowa 537. The defect in this reasoning lies in the assumed premise, i. e., that Whittman received the money as Groos's agent. The law is well settled that an agent merely to find a purchaser for land is not authorized to receive payment therefor, not even that which is to be paid down. Mechem on Agency, Section 797; *Halsell v. Renfrow,* 14 Okla. 674 (202 U. S. 287). The farthest any case has gone has been to say that authority to contract for the sale of land will authorize the agent to receive so much of the purchase money as is to be paid down, this being regarded as an incident of the power to sell. *Alexander v. Jones,* 64 Iowa 207. This was not an accurate statement of

8. PLEADING: matters specially pleaded: principal and agent: ratification.

the law though the cause was rightly decided; for the conveyance was signed by the principal at a distance and forwarded to the agent to be delivered to the purchaser, so that there was in fact an authority to sell and convey. Authority to convey as well as to sell is quite generally held to be requisite in order to warrant payment to the agent, and the cases cited in *Alexander v. Jones* so hold, or else are not in point. The headnote in *Yerby v. Grigsby,* 9 Leigh (Va.) 387, lends apparent support, but is not in accordance with the opinion, as appears from *Mann's Executors v. Robinson,* 19 W. Va. 49 (42 Am. R. 771). In *Johnson v. McGruder,* 15 Mo. 365, the agent was authorized to sell and loan the money, and the court held that the express power to loan clearly implied the right to receive the purchase price for that purpose. *Goodale v. Wheeler,* 11 N. H. 424, decided that a committee appointed by a town meeting to sell certain real estate at auction might prescribe that a deposit by the purchaser at the time of sale should be forfeited to the town if a sale to him should not be consummated. No deposit was made. Story on Agency, Section 58, states the rule that an agent to sell and convey may receive the cash payment. *Higgins and Gould v. Moore,* 6 Bosw. (N. Y.) 344, and *Hoskins v. Johnson,* 5 Sneed (Tenn.) 469, relate to agencies to sell personal property. The decisions quite uniformly declare that the agent empowered by parol or in writing merely to contract for the sale of land may not receive for his principal the purchase money. *Mann v. Robinson, supra; Peck v. Harriott,* (Pa.) 9 Am. D. 415; *Dyer v. Duffy,* 39 W. Va. 148 (24 L. R. A. 339); 1 Am. & Eng. Ency. of Law (2d Ed.) 1009; 31 Cyc. 1368; *Smith v. Browne,* 132 N. C. 365 (43 S. E. 915); *Carson v. Smith,* 5 Minn. 78 (77 Am. D. 529); *Shaw v. Williams,* 100 N. C. 272; Mechem on Agency, Section 814.

Of course, if the agent is given the power to sell, the power to do what is essential to effect an enforceable contract of sale is fairly to be implied; and this may be the execution

of a written agreement, or possibly, in this state, a payment of money to bind the bargain. But where the authority is merely to enter into a contract of sale, the power to collect would not seem necessarily to be inferred. In any event, as Whittman was not authorized to sell or to enter into a written contract, he might not receive payment for defendant; and Dodd, in handing the currency to Whittman, must be deemed to have employed him in his behalf to forward the money. This being so, Groos rightly returned the contract as well as the check and drafts to Whittman, and there was no ratification. The court erred in decreeing specific performance. The petition should have been dismissed.—*Reversed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.